[Civ. No. 9608.   Third Dist.   Oct. 23, 1959.]

JOHANNA BECKMANN, an Incompetent Person, etc., Respondent, v. MARGARETHE S. BECKMANN, Appellant.

Marvin C. Hix for Appellant.

E. L. Means and Oliver J. Northup, Jr., for Respondent.

WARNE, J. pro tem.*—This is an appeal from a judgment cancelling a deed in an action filed by the respondent's guardian, whereby certain real property was conveyed to respondent's daughter, the appellant, during the pendency of proceedings for the commitment of the respondent to a state mental hospital on the grounds that respondent did not have legal capacity to execute a deed, and that the deed was executed as the result of undue influence and without consideration.

The trial court found, among other things, that although the plaintiff was in a weak mental condition due to advanced senility, as a result of which she was confused and disoriented as to time, place, and persons, and suffered from failing memory, particularly as to recent events, nevertheless she was not completely without understanding with regard to any transaction or transactions concerning her own property. However, it further found that the transfer (deed) was wholly without consideration; that a relationship of complete trust and confidence existed between respondent and appellant at all of said times and during the transaction involved herein, and that the conveyance was directly and solely the result of undue influence on the part of the appellant. Upon these findings judgment was entered in favor of respondent wherein it was declared that the deed in question was invalid, null and void, and it was vacated and cancelled of record. Appellant contends that the evidence is insufficient to support the findings and the judgment.

It appears from the record that appellant is respondent's oldest daughter and that for many years prior to 1939 respondent lived in San Francisco with appellant who was respondent's main support. In 1939 respondent moved to a small house which she owned near Santa Rosa and which is situated on the property which is the subject of the conveyance in question. The property consists of approximately four acres. Appellant visited her mother practically every weekend and regularly sent her money for her living expenses, while

---

*Assigned by Chairman of Judicial Council.

respondent's other children contributed almost nothing to her support, if anything, except small, infrequent gifts.

In the spring of 1955, respondent, who was approximately 80 years of age, evidenced signs of advanced senility. On several occasions she became lost; at times she would be confused and failed to recognize her relatives; she became neglectful of her person; she allowed her house to become untidy, leaving the bed unmade and dishes unwashed; she made irrational accusations against appellant, on one occasion accusing appellant of throwing scissors and rolled paper at her. She told her daughter-in-law that appellant had brought some papers for her to sign but she had vomited on them. Due to respondent's condition, in May of 1955, her son, Emil, filed a petition under the provisions of section 5047 of the Welfare and Institutions Code to have respondent declared a mentally ill person, and she was placed in the Sonoma County Hospital pending the hearing on said petition. Upon learning of the filing of the petition and the incarceration of her mother, appellant immediately went to Santa Rosa from her home in San Francisco and contacted the district attorney's office, and upon agreement that appellant would keep her mother with her, the district attorney arranged for respondent's release. Thereafter they went to the home of their friends, a Mr. and Mrs. Anderson, where they spent the night. They were accompanied by a family friend, Caroline Reid, who likewise spent the night at the Anderson home. Appellant testified that she was not told that there would be a further hearing upon the petition. Mr. Anderson testified that that afternoon respondent asked him if he could get it fixed so that she could turn over her property to appellant as she was going to live with appellant. He told her that he thought it could be arranged by a friend of his who was an attorney. He didn't think anyone else was present at that time. He further testified that he never discussed the subject matter with appellant and never told her what her mother had said. Later, when all were seated at the dinner table in the Anderson home, the subject matter was mentioned by Mr. Anderson and respondent said, with reference to her property, "Well, Gene [Anderson] is going to get it fixed up for me." In the course of the same conversation at the dinner table Anderson asked appellant about the description of the property, about the deed, and she said she didn't have it. Appellant stated that at no time was any conversation whatever held between her and her mother

with reference to the contemplated conveyance of the property. Caroline Reid testified that she was sure that the subject was not discussed in her presence in the Anderson home that evening. Two days later appellant returned to San Francisco taking respondent with her. However, on June 3 she brought her mother back to Santa Rosa so that she could execute the deed which Mr. Anderson's lawyer friend had prepared. Mr. Anderson met them at the bus depot and accompanied them to the attorney's office. He and respondent went into the attorney's private office but appellant remained in the reception room. The attorney testified that respondent appeared rational and that she noticed that her first name had been misspelled in the deed. After the deed was executed respondent and Mr. Anderson returned to the reception room where the appellant paid the notarial and recording fees. Appellant then returned to her apartment in San Francisco, taking her mother with her where the mother stayed until June 16 or 17, at which time she returned to Santa Rosa with her daughter, Ida, to get some of her clothes. She refused to return with Ida to San Francisco and thereafter on June 27, 1955, was adjudged a mentally ill person and committed to the Department of Mental Hygiene for placement in the Napa State Hospital.

■ While the evidence is conflicting as to the plaintiff's mental condition, the finding that she was in weak mental condition on the date of the conveyance finds support in the record. Likewise, the evidence clearly supports the finding that respondent was in appellant's custody for several days prior to the making of the conveyance, and that the appellant took an active part in bringing the respondent from San Francisco to the law office in Santa Rosa where the deed was signed. There is also substantial evidence in the record to support the finding that the appellant had the respondent's trust and confidence. These facts, coupled with the activity on the part of the appellant in securing the deed (as pointed out by the trial court in its memorandum of order denying motion for a new trial), created a presumption of undue influence which the trial court felt appellant did not sufficiently overcome. ■ Of course, the weight and effect of the evidence was a matter for the trial court to determine and when, as here, two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Schuster* v. *Schuster*, 150 Cal. App.2d 650, 654 [310 P.2d 481].)

In *Longmire* v. *Kruger*, 80 Cal.App. 230, 237 [251 P. 692], this court said: "Unquestionably this is the rule of equity, and a deed of conveyance from a parent to a child is not presumed to be invalid. Indeed, without further facts, just the contrary is true, and such a deed is presumed to be valid. (3 Thompson on Real Property, 1052, § 2886; 2 Pomeroy's Equity Jurisprudence, 4th ed., 2076, § 962.)

"But where the parent is aged, infirm, or otherwise in a condition of dependency upon the child, who exercises authority over him, a presumption arises which places the burden upon the beneficiary of the gift conveyance, to show the transaction was fair and free from fraud. Equity will scrutinize such a transaction with great care, and under such circumstances slight evidence will suffice upon which to base a finding of undue influence and set aside the deed. [Citing cases and texts]."

We further quote from pages 239 and 240: "The Civil Code, section 1575, defines undue influence, and subdivision 2 of that section reads, 'Undue influence consists in taking an unfair advantage of another's weakness of mind.'

"The question of what constitutes sufficient proof of undue influence depends upon the facts and circumstances of each particular case. (3 Thompson on Real Property, § 2876; *Shipman* v. *Furniss*, 69 Ala. 555 [44 Am.Rep. 528, 533].) Quoting from the last-mentioned citation, this language is used: 'What constitutes undue influence depends upon the circumstances of each particular case. It is a species of constructive fraud which the courts will not undertake to define by any fixed principles, lest the very definition itself furnish a finger-board pointing out the path by which it may be evaded.' (Bigelow on Frauds, 283; 1 Redfield on Wills, 530.)"

Quoting further from the Longmire case at page 240: "No presumptions of undue influence are indulged in upon the contest of a will, unless confidential relations are first established; but with respect to gifts or conveyances *inter vivos*, the extreme age and infirmity of the grantor, together with slight evidence of circumstances from which it may be inferred that the instrument was the product of coercion, will suffice to shift the burden and require the beneficiary to show affirmatively that the transaction was fair and free from influence."

In this case the grantee was respondent's daughter in whom respondent had confidence. At the time the deed was

executed appellant was nearly 80 years of age and in a weak mental condition due to advanced senility. There was some activity on the part of the appellant in securing the deed. There was no valuable consideration for the deed. These facts and circumstances amply support the findings and the judgment that the deed was the result of undue influence.

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 19, 1959, and appellant's petition for a hearing by the Supreme Court was denied December 16, 1959.