[Civ. No. 9936.    Third Dist.    Dec. 16, 1960.]

JESS J. ELDRIDGE et al., Respondents, v. SCOTT
LUMBER COMPANY (a Corporation), Appellant.

Hardin Barry for Appellant.

Harold L. Abbott for Respondents.

WARNE, J. pro tem.*—This is an appeal from a judgment awarding damages resulting from the wrongful diversion of riparian waters by appellant from a natural creek which crosses the respondents' land.

Respondents, who are the owners of a 160-acre parcel of land in Lassen County, alleged that the land is riparian to Beaver Creek, which flows across the land in question; that by virtue of their ownership of said property bordering on Beaver Creek they have for more than 70 years used, and now are using, all of the water therefrom (except as such use has been interfered with by the appellant) for stock, domestic and agricultural purposes; and that all the water of Beaver Creek has been, and still is, reasonably necessary for those purposes. The complaint further alleges that the appellant unlawfully dammed up Beaver Creek at a point upstream from the land of respondents and diverted water out of the natural channel of the creek in 1954 and 1955 with the result that water failed to reach respondents' property in sufficient quantity to water respondents' cattle.

The record shows that normally Beaver Creek has a continuous flow until July when the creek dries up in the area of respondents' 160-acre parcel of land, but by the middle of September water is again flowing downstream as far as the 160-acre field.

The property in question is part of a 320-acre fenced enclosure and lies to the south of respondents' home ranch and within 500 yards of the north boundary of Lassen National Forest. Respondents lease some 60,000 acres of forest land from the Lassen National Forest for grazing purposes through

---

*Assigned by Chairman of Judicial Council.

the summer until October 15th each year. The 160-acre parcel is used by respondents as their holding field in the spring when the cattle are to be put out on the Forest Service range and again in October as they are taken off.

In 1954 the appellant entered into an agreement with the Forest Service, United States Department of Agriculture, for the purchase and removal of government timber from an area in the vicinity of Beaver Creek and upstream from respondents' land. The contract authorized appellant to build roads on the national forest lands and to improve Forest Service roads for hauling forest products from the sale area; provided, that such road engineering construction or improvement was approved in advance by the Forest Service officer in charge and in accordance with government specifications.

The contract further provided that all roads under Forest Service jurisdiction, which are used by the purchaser for log or lumber-hauling puposes, shall be maintained by it in a serviceable and satisfactory condition, as required by the Forest Service officer in charge, and in conformity with certain specifications. One of the specifications was that "[d]uring dry weather the roads shall be sprinkled to avoid excessive dusting, loss of surfacing and to help preserve satisfactory surface riding qualities." In order to comply with this specification the appellant pumped water out of Beaver Creek in late October 1954, and again in the fall of 1955, in order to sprinkle its logging roads.

The trial court found that the plaintiffs' 160-acre parcel of land was riparian to Beaver Creek; that "during the years 1954 and 1955, defendant Scott Lumber Company, a corporation, through its employees had been performing logging operations upon United States Government land in Lassen County near the headwaters of Beaver Creek and upstream from plaintiffs' property; that during the course of said logging operations, defendant wrongfully and unlawfully dammed up said Beaver Creek and took large quantities of water therefrom in connection with said logging operations; that by reason of said unlawful and wrongful actions, the waters of said Beaver Creek did not reach plaintiffs' land in sufficient quantities for plaintiffs' purposes . . . ; that the damming up and taking of the waters of said Beaver Creek by defendant was in violation of plaintiffs' rights to have the natural flow of said waters of Beaver Creek upon, along and across their said land, and that said interference with said rights is wrongful, unlawful and without right; that defend-

ant did not and never has had any right whatsoever in or to the waters of Beaver Creek or any part thereof, nor any right to divert any of said waters; [t]hat as a direct and proximate result of defendant's unlawful and wrongful taking of the waters of Beaver Creek, said waters did not reach plaintiffs' lands in sufficient quantities to provide water and pasturage for plaintiffs' stock; that by reason thereof, plaintiffs have been required to move their stock to other ranges to plaintiffs' damage in the sum of $5,500.''

▪ Appellant contends that the evidence is insufficient to sustain the court's findings and the judgment. Appellant asserts that the government was in privity of contract with the appellant and is estopped to deny that it gave appellant permission to pump water out of Beaver Creek for the purpose of constructing, surfacing and maintaining roads belonging to the government, on the government land, out of a natural stream that flowed through government land, and in which the government had riparian rights. We do not agree with appellant. Granting that the government could have authorized appellant to use reasonable and necessary water taken from Beaver Creek for a beneficial use, the contract, nevertheless, did not authorize appellant to pump water out of Beaver Creek. John F. Woolfolk, District Ranger for the United States Forest Service, who was in charge of the district in which the sale was made, testified that he did not give appellant permission to take water from Beaver Creek; and that when he discussed the matter with appellant's forester, he suggested that they talk to ''Jess'' (one of the respondents) about it. Ranger Edward E. Boehm, who succeeded Woolfolk as District Forest Ranger of the United States Forest Service, Lassen National Forest, also testified that he did not specifically give permission to appellant to take water from Beaver Creek. He also told one Bartle who pumped water from the creek for use on the roads ''to go and see Mr. Eldridge about the water, . . .'' Further, there is nothing in respondents' conduct, as disclosed by the record, that would suggest that they consented to the taking of the water from Beaver Creek.

▪ The evidence is also sufficient to support the award of damages in the sum of $5,500. Jess J. Eldridge, one of the respondents, testified that in 1955 because of the lack of water in the 160-acre holding field at least 250 head of his cattle lost 200 pounds each in weight; that at that time cows were worth around 11 or 12 cents a pound, and steers 17 or 18 cents a pound; and that ·11 cents would be a fair estimate, a very

conservative estimate, of the amount. This testimony was uncontradicted. In computing the damages, the trial court used the 11 cent per pound value, which when multiplied by the total weight loss mathematically amounted to the sum of $5,500.

██ Appellant also contends that the damages awarded are excessive. It argues that respondents did nothing to minimize their damages, although they could have avoided sustaining any damage by moving their cattle to other watering grounds nearby. Halls Flat was one of these areas, but appellant also was taking water from that well to sprinkle the logging roads. Also, there was testimony that 1955 was a dry year and respondent Jess Eldridge testified that there was not much water on the northern end of the range that year; that the so-called ''Beaver Creek'' pasture (not respondents' 160-acre field) was too small to hold very many cattle; that there was no water at the Eldridge homestead; that there was not enough water at the Round Barn pasturage to grow hay; and that they did put some cattle at Round Barn. Considering this testimony the trial court could find that the respondents had no other lands than those mentioned where they could have moved their cattle. On this record the court was justified in assessing damages in the sum of $5,500. The weight and effect of the evidence was, of course, a matter for the trial court to determine and is binding upon this court. (*Schuster* v. *Schuster*, 150 Cal.App.2d 650 [310 P.2d 481]; *Beckmann* v. *Beckmann*, 174 Cal.App.2d 717 [345 P.2d 121].)

██ The next point urged for a reversal involves certain rulings whereby certain testimony was admitted which was outside the issues of the pleadings. This testimony was objected to by the appellant and it now urges that it was prejudicial. The cause was tried by the court, and the court in rendering its decision stated that it was not considering any of that evidence in arriving at the judgment. Even if the trial court had not so declared, it would be assumed that the court in reaching these conclusions disregarded any incompetent testimony which might have found its way into the record. (*Roth* v. *Thomson*, 40 Cal.App. 208, 216 [180 P. 656].)

██ Finally, there was no error in the trial court's refusal to grant appellant's motion for a new trial. Appellant cannot claim surprise and evidence outside the issues as a ground for a new trial where that evidence was not relied upon by the trial court.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.