[Civ. No. 11263.   First Appellate District, Division One.—November 26, 1940.]

SAMUEL D. ORWITZ, Appellant, v. THE BOARD OF DENTAL EXAMINERS, Respondent.

Faulkner & O'Connor for Appellant.

H. E. Lindersmith for Respondent.

Vincent Surr and Morgan V. Spicer, as *Amici Curiae,* on Behalf of Appellant.

WARD, J.—Appellant in the superior court obtained an alternative writ of mandate to annul the action of the Board of Dental Examiners of the State of California suspending his license to practice dentistry for a period of one year. Upon stipulation of the respective parties, the hearing in the trial court was confined to the evidence contained in a transcript of testimony taken before the board. The writ of mandate was denied and the alternative writ discharged.

The accusation against appellant before the board contained four counts. He was acquitted upon the third and fourth, and found guilty on the first and second, which charged (1) that appellant in advertising as a dentist caused to be exhibited to the public from a show window of one of his dental offices ''a representation of the tooth, teeth, bridgework or a portion of the human head''; (2) that he ''made use of advertising statements of a character tending to deceive or mislead the public''.

Appellant maintains dental offices in seven California cities. The charges upon which his suspension is based have reference to one of two offices in Sacramento—a branch office, located in a store building fronting directly on the sidewalk. A licensed practitioner was in charge of the two Sacramento offices, visiting the office in question with a dental nurse approximately during the noon hour each day. Otherwise the office was in charge of a man described by appellant as a male nurse or technician. In the window of the office were displayed a human skull, several dentures and a picture of George Washington, accompanied by a statement comparing by inference plates worn by Washington with those made by appellant. At the top of a small case containing dentures there was a piece of paper upon which was typed the word ''Unbreakable''. Appellant testified that as soon as the advertising matter was called to his attention he directed its discontinuance; that the advertising matter was contrary to the provisions of Business and Professions Code, section 1680, subdivisions 11, 14. That appellant's license was subject to revocation or suspension seems to be conceded, but it is urged

that there is an entire lack of evidence disclosing a knowledge on the part of appellant of the existence of the displays or exhibits.

We approach the question upon the theory that there must be some substantial evidence, even though it may be circumstantial, to prove appellant knew of this advertising. The evidence shows the exhibits introduced to be advertising matter. A photograph thereof was made on April 27, 1937, and the photographer testified that the display in the window several months later appeared to be the same as on the date the photograph was taken. Another witness saw a display on May 11, 1937. A third witness first saw the display in June of 1936, and a fourth testified that he observed it at least nine times between January and April of 1937.

The dentist in charge of the Sacramento offices testified that the nurse attached to the main office called his attention to the window exhibit during the latter part of April, 1937, and that he directed its removal; that on account of the mental and physical condition of the male nurse in charge of the branch office, Dr. Orwitz was communicated with and that he appeared in Sacramento and directed the transfer of the male nurse to San Francisco. This witness testified that he observed the advertising exhibit only upon one occasion—the date of its removal. The office nurse at the main Sacramento office corroborated the dentist in charge except that she fixed the time of the removal of the male nurse to San Francisco as the month of May. Appellant's bookkeeper placed the time of the transfer of the male nurse as between May 15th and May 22d.

Appellant testified that he practiced in San Francisco and attempted to make visits to his various offices once a week. He also testified that he had not seen and did not know of the window display; that it had been made without his knowledge; that he would not have permitted such an exhibit in any of his offices; that he knew it was illegal. He denied ownership of the skull and testified that he did not make "unbreakable" plates; that at this time there is no denture that is unbreakable.

There is ample evidence to support the findings made and filed in the superior court. The particular point made by appellant is with relation to the right of the court to reject direct and positive testimony of a fact in favor of rea-

sonable inferences drawn from indirect evidence at variance with it. He urges that "there is an entire lack of evidence disclosing a knowledge on the part of appellant of the existence of such displays or exhibits".

Knowledge is generally associated with the mental impression made upon an observer of external objects, that is, that they in fact exist. Appellant was accused of advertising in a manner and form obnoxious and in fact contrary to the provisions of the Dental Practice Act. It would not be necessary to show that he prepared or placed or even saw the advertisement if there was a consciousness or awareness on his part of the advertisement. This awareness might be proven by circumstances. For instance, evidence of information conveyed to appellant of the existence of the exhibition or that he was often placed physically in such a position in passing into the Sacramento branch office that it might reasonably be concluded that he ultimately saw and understood the purport of the advertisement.

Appellant relies upon certain language in *Osborne* v. *Baughman,* 85 Cal. App. 224 [259 Pac. 70], and *Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal. (2d) 64 [77 Pac. (2d) 1059]. In the Engstrom case (p. 70), the court said: "On the other hand, an *inference* is dispelled as a matter of law when it is rebutted by clear, positive and uncontradicted evidence *which is not open to doubt* . . . " (Second italics added.) In many cases on appeal and on trial, it is urged that a direct denial of a fact is equivalent to a complete destruction of any evidence in conflict therewith. If this contention, as often broadly stated, were accepted, it would not be possible to prove any fact against a direct denial, including the denial of an accused guilty of an offense denounced by the Penal Code. It was not intended that a denial should be classified as conclusive evidence. This was demonstrated when the statement in the Engstrom case was qualified by the phrase "not open to doubt". In other words, if the denial is open to doubt, an inference drawn from a fact legally proved may overcome the denial. That such thought controlled in the writing of the Engstrom opinion is shown by an analysis of the facts which led to the statement. The vital question there under consideration was the length of time permitted by an automobile sales company to a prospective buyer to use and operate an automobile on a test tour. The

facts are set forth in the opinion (p. 67) as follows: "After some consultation between the sales manager and salesman, it was agreed that defendant Silkman might take the car for the purpose specified. However, the evidence indisputably discloses that Silkman was expressly told he was to return the car within an hour and a half or two hours at the outside. He agreed to this condition and promised to return the car within two hours. He departed the salesroom with the car at about 5 P. M. on July 25, 1936. He did not return the car within the agreed time. In fact, he did not return it that day or night. On the contrary, he returned it the following day at approximately 4 P. M., the accident having occurred shortly prior thereto. Following the expiration of the period prescribed for the return of the car, the respondents made several efforts to locate the defendant Silkman. Their efforts in this regard culminated shortly prior to its return in a report to the police department that the car had been stolen. The appellant made no effort to controvert the evidence that the car had been entrusted to Silkman for the limited period of two hours or that the accident had occurred long after the period had expired. The evidence in this respect is uncontradicted."

The contention was presented that the inference drawn from proof of ownership and the permission for the two-hour test was *prima facie* proof of permission to use the car for approximately twenty-four hours. This was sufficient to preclude the granting of a nonsuit. The denial of permission was not contradicted by direct or circumstantial evidence in the Engstrom case, and the question of "knowledge" was not involved. However, in *Osborne* v. *Baughman, supra,* "knowledge" was a subject of consideration. In that case the question determined was whether in an aiding and abetting case any testimony was adduced proving that a dentist was chargeable with knowledge that one of his unlicensed employees was practicing dentistry. The employee had previously been convicted of practicing without a license. We quote from the Osborne case (pp. 226, 227) as follows: "The appellants assert that from the fact that Dr. Osborne had heard that Wilson had been accused of practicing without a license in San Diego, and from the fact that Wilson was managing his office in Los Angeles—which Dr. Osborne had not visited in two or three months—they were justified in believing that respondent had knowledge of the fact that

Wilson was doing operative dentistry. This argument would be more forceful had there been a series of acts instead of an isolated instance; but as it stands we may only suspicion that there was more than one act, and, building upon suspicion rather than proof, if we adopt appellants' argument, infer that the doctor must have had knowledge by reason of its continuity. No inference is legally justifiable in this situation, and there is uncontradicted evidence in the record that Wilson's one act of practice was without Dr. Osborne's knowledge. But even if an inference were justified, the positive uncontradicted testimony to the contrary would dispel the inference.''

In the instant case there was evidence of continuity of exhibition of this advertisement extending for approximately a year. Unlike the Osborne case, there is not an entire lack of competent evidence upholding the position of the Board. (*Fuller* v. *Board of Medical Examiners*, 14 Cal. App. (2d) 734 [59 Pac. (2d) 171]; *County of Los Angeles* v. *Industrial Acc. Com.*, 13 Cal. App. (2d) 69 [56 Pac. (2d) 577].) ■ It is not the duty of this court to weigh the evidence, but we may point out that from the numerous visits of appellant to that particular office, there was ample opportunity for him to have known by actual observation that the exhibits occupied the window, and this is reinforced by the positive testimony of the dentist in charge of the main office, and the nurse there, that the information was conveyed to the appellant. On rebuttal one witness testified that the advertisement was there after subpoenas had been issued to witnesses to attend the hearing before the Board.

The question of knowledge and consent on the part of appellant relative to the maintenance of the exhibit as an advertisement is open to doubt within the meaning of the Engstrom case; therefore the denial did not as a matter of law dispel a reasonable inference drawn from other facts proven in the case. From all the evidence, the approval of the maintenance of the exhibit could be implied. (*Engstrom* v. *Auburn Auto Sales Corp., supra,* p. 68.) On the hearing before the superior court in the present case, the judge commented as follows: ''Having read and reviewed all of the evidence presented at the hearing conducted by the Board, it is my conclusion that such evidence is amply sufficient to justify the Board's findings and action. Petitioner has been

unable to convince me that the board's decision is contrary to the weight of the evidence. It is my independent conclusion, derived from the evidence, that petitioner knew, consented to and authorized the maintenance of the objectionable conditions on which the charges against him are based."

In *Drummey* v. *State Board of Funeral Directors,* 13 Cal. (2d) 75, 85 [87 Pac. (2d) 848], the court said: "In view of these principles, it necessarily follows that the court to which the application for mandate is made to secure the restoration of a professional license must exercise an independent judgment on the facts. This does not mean that the preliminary work performed by the administrative board in sifting the evidence and in making its findings is wasted effort. As was pointed out in the St. Joseph Stock Yards case, *supra,* in weighing the evidence the courts can and should be assisted by the findings of the board. The findings of the board come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence."

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 26, 1940. Peters, P. J., voted for a rehearing.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 23, 1941.