[Civ. No. 16933.   First Dist., Div. One.   July 26, 1956.]

TATSUKO OKUDA ENDO, Appellant, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Mas Yonemura and Thomas B. Richardson for Appellant.

Edmund G. Brown, Attorney General, Carl W. Wynkoop and Charles A. Barrett, Deputy Attorneys General, for Respondents.

WOOD (Fred B.), J.—Appellant's on-sale liquor license was revoked by the State Board of Equalization for violation of sections 24200.5, subdivision (a), and 24200, subdivision (a), of the Business and Professions Code, upon the ground that she knowingly permitted the illegal sale of narcotics upon the licensed premises (the Mikado Bar) by an employee, George Suzuki, by successive sales of marijuana over a continuous period of time (August 17, 18 and 20, 1954), the board declaring that continuance of the license would be contrary to public welfare or morals.

Appellant's first contention is that the evidence is insufficient to support the finding that the licensee ''knowingly permitted'' the illegal sale of narcotics upon the licensed premises.

Respondent argues at some length that the finding of a violation of section 24200, subdivision (a), does not necessarily embrace, as an element of the violation, ''knowledge''

and "permission" upon the part of the licensee. The board well could find that, irrespective of such knowledge or permission, "the continuance of a license" at these premises where illegal sales of narcotics have occurred "would be contrary to public welfare or morals." However, it did not do that in this case. It limited the charge to the specific facts expressly pleaded in the accusation. These facts were that the "licensee did *knowingly permit the illegal sale of narcotics upon her licensed premises* by an employee, George Suzuki, by *successive sales* of marihuana *over a continuous period of time,* to wit: on or about August 17, August 18, and August 20, 1954." (Emphasis added.) This, obviously, was a pleading in the very words of section 24200.5, subdivision (a), amplified sufficiently by names, dates and designation of the narcotic sold, to meet the requirement of the Administrative Procedure Act (made applicable to this type of proceeding by Bus. & Prof. Code, § 24300) that the accusation "shall be a written statement of charges which shall set forth in ordinary and concise language the acts or omissions with which the respondent is charged, to the end that the respondent will be able to prepare his defense. It shall specify the statutes and rules which the respondent is alleged to have violated, but shall not consist merely of charges phrased in the language of such statutes and rules." (Gov. Code, § 11503; construed and applied in *Manning* v. *Watson,* 108 Cal.App.2d 705, 710 [239 P.2d 688].)

In other words, the board conceivably could have treated these sales of marijuana as a transaction proscribed by section 24200, subdivision (a), regardless of the knowledge of the licensee-proprietor, had it accompanied that charge with an appropriate statement of facts. But it did not choose to do so. Instead it predicated each of the charges, the violation of section 24200, subdivision (a), and the violation of section 24200.5, subdivision (a), upon the fact that the licensee "knowingly permitted" narcotics to be illegally sold on the licensed premises.

The evidence pertaining to the question whether she "knowingly permitted" such sales may be briefly summarized:

On August 17, 1954, Officer Alonzo visited the Mikado Bar shortly after 6 p. m. to investigate alleged narcotic violations. He was accompanied by an informant who introduced him to the bartender, George Suzuki. The informant asked Suzuki if he could fix them up that night and was told to return in an hour and a half, which they did. Suzuki then gave the in-

formant a small paper bag of marijuana and received $20 for it.

The following day at 6:05 p. m. Alonzo returned to the bar and after ordering a drink, asked Suzuki if he could fix him up again. After some delay, during which Alonzo left the bar while Suzuki made the contact, he returned and Suzuki gave him in return for $20 a brown paper sack containing marijuana.

On August 20, at approximately the same hour, Alonzo phoned Suzuki, seeking another bag. Suzuki told him to call back later, but when he did, Suzuki told him he had not made the contact yet and for Alonzo to come to the bar. There Suzuki asked for advance payment and was given $60. In about 20 minutes an unidentified man entered the bar and gave Suzuki a bag over the counter in return for payment. Suzuki thereupon delivered the bag to Alonzo. It contained marijuana.

On August 24, 1954, Alonzo phoned Suzuki seeking more bags. Suzuki said none were available but suggested that together they could buy a pound. Alonzo agreed to this proposal but nothing further happened. The place was raided and Suzuki was arrested that same day.

No one other than Suzuki was tending bar at the time of any of these sales.

The licensee testified in her own behalf. She said that although the bar was open between 6 p. m. and 2 a. m. she herself spent little time there. Her husband and her brother, who had other employment, tended to its operation on their off-work hours. Suzuki had been employed as bartender for some time and was the only bartender employed during the past two years. She did not personally know of his illegal activities nor had she any reason to suspect them. She did not know Suzuki had ever had trouble with the police, and had found him reliable and honest.

The licensee's brother testified that he was employed as a waiter in a restaurant across the street from the bar, finishing after 7 p. m. He aided in supervising the bar and was often there from 8 p. m. until closing time, but not always. He said that because of his other employment he did not pay much attention to the bar any more and depended upon Suzuki for information as to what liquor stock to order. He testified that Suzuki had been at the bar for the past two years and that he did not suspect Suzuki of illegal activities, nor did he know that Suzuki was handling narcotics.

This testimony, coupled with the statutory presumption that "[s]uccessive sales over any continuous period of time shall be deemed evidence of such permission" (Bus. & Prof. Code, § 24200.5, subd. (a)), furnishes substantial evidence in support of the board's finding that the licensee did "knowingly permit" the illegal sale of narcotics upon her licensed premises and of the trial court's finding that the board's finding is supported by the weight of the evidence.* ▮ We, as an appellate court, are governed by the substantial evidence rule, determining whether the evidence, viewed in the light most favorable to the respondent, sustains the findings of the trial court, resolving any reasonable doubts in favor of those findings. This rule obtains whether an appellate court is reviewing the sufficiency of the evidence to support the verdict of a jury or the findings of a trial court (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]), and whether the findings involve the decision of a local administrative agency (*Corcoran* v. *San Francisco etc. Retirement System*, 114 Cal. App.2d 738, 741 [251 P.2d 59]) or the decision of a statewide agency exercising judicial power conferred by the Constitution (*Marcucci* v. *Board of Equalization*, 138 Cal.App.2d 605, 608 [292 P.2d 264]) or the decision of a statewide agency exercising power conferred only by statute (*Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308-309 [196 P.2d 20]).

Appellant argues, in effect, that the evidence in the case outweighs the statutory presumption. The evidence which appellant thus invokes consists of the licensee's denials of knowledge and those of her brother, the secretive nature of these sales, the fact that the narcotics sold were not kept upon the premises but were brought in from the outside, the

---

*In reviewing the board's action under section 24200, subdivision (a), a trial court would not be exercising its independent judgment on the evidence. It would be determining whether the findings were "supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c). See *Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 131 [173 P.2d 545]; *Chosick* v. *Reilly*, 125 Cal.App. 2d 334, 338 [270 P.2d 547].)

In reviewing the board's action under section 24200.5, subdivision (a), a trial court might be exercising its independent judgment. Section 24200.5, subdivision (a), is in form at least a *legislative* mandate and neither party has questioned the competency of the Legislature to issue the mandate. In carrying out that mandate the board might not be exercising the judicial function given it by the *Constitution*. If not, a trial court would be determining whether the board's findings were "supported by the weight of the evidence" (§ 1094.5, subd. (c)), a question which need not be decided here because the trial court in fact declared that the findings of the board "are supported by the weight of the evidence."

failure of the officer to inform the licensee after making a purchase, and the fact that for seven years (1937-1942 and 1952-1954) this place was operated without complaint of any kind heretofore made concerning it. But it is not our function, as a reviewing court, to weigh the evidence. ██ The evidence (including the statutory presumption) which supports the finding is substantial: Sales made on the 17th, 18th and 20th of a given month by the very person the licensee had put in charge of the place, and the readiness with which he made them, token an established and thriving narcotics business conducted at this bar by the manager of the licensed on-sale liquor business. Manager Suzuki's refusal to sell when again solicited on the 24th of the month did not token any change of heart or of plans upon his part to quit the narcotics business. He refused simply because his source of supply (in small quantities) had dried up, at least temporarily. He still could deal in larger quantities (not less than a pound at a time) and suggested that the officer join him in buying a pound. The officer acceded to this arrangement. There was every prospect of a continuance of this business indefinitely into the future, so far as Suzuki was concerned. It ended merely because of Suzuki's arrest, apparently because the officer who made the purchases, or his superior, concluded that enough evidence had been obtained.

In disallowance of the effect of this statutory presumption appellant cites *People* v. *Forbath*, 5 Cal.App.2d Supp. 767 [42 P.2d 108] and *Osborne* v. *Baughman*, 85 Cal.App. 224 [259 P. 70]. Each involved an inference, not a statutory presumption. In the Osborne case the asserted inference was predicated upon a single act (not successive acts) of an employee and, in addition, the inference, if any were justified, was deemed dispelled by positive, uncontradicted testimony. ██ In contrast, a presumption is not thus dispelled by evidence produced by the opposite party. (*Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1059].) ██ Indeed, an inference is not necessarily dispelled under any and all circumstances by evidence which conflicts with it (*Orwitz* v. *Board of Dental Examiners*, 41 Cal.App.2d 653, 656 [107 P.2d 407]). In the Forbath case the court held that the mere fact that an illegally parked automobile was registered in the name of a certain person did not alone and ' by itself constitute prima facie proof that such person operated the car upon the occasion in question and had knowledge of or aided or abetted in or consented to its illegal parking. The

Forbath decision was distinguished, by the court which rendered it, in the later case of *People* v. *Bigman,* 38 Cal.App.2d Supp. 773 [100 P.2d 370], holding that the disputable presumption declared in section 591 of the Vehicle Code (that the registered owner of an illegally parked vehicle was the person who parked it) "is rational to its factual premise, that it materially aids the state to prima facie proof of a matter peculiarly within the knowledge of the defendant and, without the presumption, difficult for the state to establish by reason of the mechanics incident to the gathering of evidence that its operation is reasonable, imposes no hardship on the defendant and deprives him of no constitutional right." (P. 780.)

Appellant criticizes the expression "successive sales over any continuous period of time" (§ 24200.5, subd. (a)), as vague and uncertain, claiming it leads to an absurdity when applied to the facts of this case. She says that three sales within a five-minute period would be absurd as a basis for the presumption, and, with that as a premise, argues that three sales within 72 hours (out of a seven-year period of operation) would be equally absurd. We do not see that the seven-year period is a proper factor for consideration. Seventy-two hours (actually 96 hours) does not seem too short a period, especially in the light of Suzuki's offer four days later to join the officer in a joint venture to buy a pound of marijuana. These and the attendant circumstances, as we have already noted, token an established practice of trafficking in marijuana by the person whom the licensee put in charge of this establishment; a quite substantial foundation for the finding that the licensee knowingly permitted the illegal sales in question.

Appellant makes much the same argument in support of her claim that this statutory presumption is unconstitutional as applied to her under the circumstances of this case; i.e., that there is no rational relation between the facts proved and the fact presumed. We are not persuaded. We hold, for the reasons already stated, that there is a rational connection between the proven illegal sales and the knowing permission presumed therefrom and that this statutory presumption comes well within the sanctions enunciated in *People* v. *Scott,* 24 Cal.2d 774, 779-783 [151 P.2d 517], and authorities there cited.

An alternative ground for affirming the judgment of the trial court is furnished by the principle that appellant as

owner and operator of the bar and as licensee is responsible for the acts of her bartender who "knowingly permitted" the illegal sales by conducting them himself. His knowledge and permission are imputable to appellant as his employer (the owner, operator and licensee) within the scope of the principle that a "licensed employer may be disciplined to the extent of revocation of his license for the acts of his employees." (*Cooper* v. *State Board of Equalization,* 137 Cal.App.2d 672, 678 [290 P.2d 914]. See also *Cornell* v. *Reilly,* 127 Cal.App. 2d 178, 186 [273 P.2d 572]; *Swegle* v. *State Board of Equalization,* 125 Cal.App.2d 432, 438 [270 P.2d 518]; *Mantzoros* v. *State Board of Equalization,* 87 Cal.App.2d 140, 144 [196 P.2d 657].)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1956.