[Civ. No. 26827. First Dist., Div. One. Sept. 22, 1970.]

JEROME KEITHLEY, as City Manager, etc., Plaintiff and Respondent, v.
CIVIL SERVICE BOARD OF THE CITY OF OAKLAND,
Defendant and Respondent;
ROBERT K. LIQUORI, Real Party in Interest and Appellant.

## COUNSEL

William J. Murphy and Alfred G. Chiantelli for Real Party in Interest and Appellant.

Edward A. Goggin, City Attorney, and William C. Sharp, Deputy City Attorney, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## OPINION

**MOLINARI, J.**—In this proceeding where the superior court granted a peremptory writ of mandate to plaintiff City Manager of the City of Oakland, compelling defendant Civil Service Board of the City of Oakland (hereinafter referred to as the "Board") to set aside its decision that Robert Liquori, the real party in interest, had been coerced into resigning his position as a police officer for the City of Oakland, Liquori appeals from the judgment granting said writ.

The superior court reached its judgment upon the evidence adduced before the Board. The Board, following a hearing upon Liquori's appeal, determined that his resignation had been coerced and that, therefore, he had been unlawfully discharged. The city manager thereupon filed the instant petition seeking to set aside the Board's decision. The court found that there was no coercion of or duress on Liquori and that he had resigned voluntarily.

The evidence adduced at the hearing by the Board was as follows: On

June 9, 1968,[1] Liquori returned home from his work as a police officer at about 3:30 p.m. At approximately 6 p.m. he received a telephone call to report to the police department's patrol division desk. Upon arriving he was asked to wait. At about 11 p.m. he was told to report to the homicide division where he was informed that he had been charged with a serious crime. After being advised of his rights he was interrogated and during the interrogation was informed that he had been charged with the rape of a woman who was staying with him and his wife. Liquori admitted having sexual relations with the woman but stated that these relations were with her consent. When the interrogation was concluded he was told to return the next day. Liquori then returned to his home at about 2 a.m.

At about 8 a.m. Liquori returned to the police department where he remained, except for going out to lunch, until 5:45 p.m. While there he received a telephone call that his wife was in a state of hysteria because she had been apprised of the charges against him. Liquori went home and stayed up the entire night with his wife.

The next morning (June 11) Liquori again returned to the police department. He arrived at about 9:30 a.m. and waited until 2 p.m. when he was directed to report to the office of Deputy Chief Brown. The interview was commenced by Brown who read Liquori's statement and the statements of several persons regarding the rape charge. Brown then advised Liquori that the district attorney had not issued a complaint and that the rape charge had been dropped. Brown then stated that these charges were only known by people in the police department and that they should not be made public. The deputy chief asked Liquori what he intended to do about the matter. Brown then read to Liquori the code of conduct from the police manual[2] and asked him if his conduct had been in keeping with such code. Liquori asked Brown what he should do, but Brown declined to advise him. Liquori asked for a few hours to think it over but Brown rejected this request. Brown again asked Liquori what he intended to do about the situation and, after Brown again declined to advise him, Liquori stated he had decided to resign because he was concerned about losing his wife if the affair came out in the open. Brown then told Liquori that in his resignation Liquori could cite "for personal reasons." Liquori then typed an "Inter-Office Letter" dated June 11, 1968, addressed to the chief of police and signed by Liquori which read as follows: "It is requested that I be allowed to resign my position with the Oakland Police Department effective 11 June 1968, for personal reasons."

---

[1]Unless otherwise indicated, all dates have reference to the year 1968.

[2]Specifically, Brown read section 31002 of the manual of rules, which stated that police employees were to conduct their private affairs so as not to bring the department into disrepute.

Brown testified that he had been advised at about 10 a.m. on June 11 that the district attorney had declined to issue a complaint. He stated that although the charges against Liquori had been dismissed, he read the statements concerning the charges to Liquori in order to "lay out the entire case" before Liquori. Brown also testified that he neither requested nor suggested Liquori's resignation, and that he had not been particularly interested in obtaining the resignation.

■ Adverting to the trial court's determination, it is clear from the recitals of the judgment that it proceeded on the basis that it was reviewing the evidence adduced before the Board to determine whether there was substantial evidence to support the Board's findings in the light of the whole record. Such was the proper scope of review of the findings of the Board, a quasi-judicial local agency or board. (*Le Strange* v. *City of Berkeley*, 210 Cal.App.2d 313, 321 [26 Cal.Rptr. 550]; *Upton* v. *Gray*, 269 Cal.App.2d 352, 359 [74 Cal.Rptr. 783]; *In re Redevelopment Plan for Bunker Hill*, 61 Cal.2d 21, 39 [37 Cal.Rptr. 74, 389 P.2d 538]; Code Civ. Proc., § 1094.5, subd. (c).) Our power, in such case, is likewise governed by the "substantial evidence" rule. (*Le Strange* v. *City of Berkeley, supra,* at p. 321; *Endo* v. *State Board of Equalization*, 143 Cal.App.2d 395, 399 [300 P.2d 366].) Both parties argue the applicability of the substantial evidence rule. Plaintiff, in addition, argues that the Board had no jurisdiction in a case of this nature. If this argument has merit we need not consider the applicability of the substantial evidence rule.

The question of jurisdiction has been raised by plaintiff for the first time on this appeal. In the court below plaintiff did not contend that the Board did not have jurisdiction, nor did he assert that the appeal to the Board was not timely. In fact, he acknowledged the Board's jurisdiction but asserted essentially that its decision was not based on substantial evidence. ■ Subject matter jurisdiction may not, however, be conferred by consent, waiver or estoppel. (*Summers* v. *Superior Court*, 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; *Johnson* v. *Banducci*, 212 Cal.App.2d 254, 259 [27 Cal.Rptr. 764].) Accordingly, an objection to subject matter jurisdiction may be raised for the first time on appeal since it is never deemed waived. (*Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union*, 69 Cal.2d 713, 721 [73 Cal.Rptr. 213, 447 P.2d 325]; *Emery* v. *Pacific Employers Ins. Co.*, 8 Cal.2d 663, 665-666 [67 P.2d 1046].)

■ The basis of plaintiff's contention that the Board is without jurisdiction to consider Liquori's attempt to rescind his resignation is based on the assertion that section 82 of the Oakland City Charter has no provision for unlawful discharges. Before considering the provisions of section 82 we observe that section 81 of the Oakland City Charter provides, in pertinent

part, that "All persons holding positions in the Classified Civil Service shall be subject to suspension, fine and also to removal from office or employment, by the City Manager, . . ."[3] Section 82 provides that "Any person suspended, fined or discharged . . . may within five days from the making by the City Manager . . . , of the order suspending him, . . . appeal therefrom to the Civil Service Board which shall fully hear and determine the matter. . . ."

■ In the present case, although plaintiff, as city manager, did not actually discharge Liquori in the usual meaning of the word "discharge," we observe that a coerced resignation is tantamount to a discharge. (See *Moreno* v. *Cairns,* 20 Cal.2d 531, 534-535 [127 P.2d 914]; *City of Los Angeles* v. *Superior Court,* 246 Cal.App.2d 73, 79 [54 Cal.Rptr. 442]; *Varela* v. *Board of Police Comrs.,* 107 Cal.App.2d 816, 818 [238 P.2d 62]; *Temple* v. *Horrall,* 92 Cal.App.2d 177, 179 [206 P.2d 909].) ■ We also note that under the Oakland City Charter the power to hire and fire police employees reposes entirely in the city manager. Accordingly, the authority to accept the resignation of such an employee also reposes in the city manager. In this case it appears that Liquori's resignation was in fact accepted by plaintiff.[4] Under the circumstances, therefore, if Liquori's resignation was in fact coerced, the acceptance of such a resignation by plaintiff amounted to a discharge of Liquori. Under section 82, such a discharge was appealed to the Board and the Board had jurisdiction to determine whether or not the resignation was coerced.

■ Adverting to the "substantial evidence" rule we first observe that in determining whether the evidence sustains the findings of the Board we too are limited to the record made before such Board. (*Le Strange* v. *City of Berkeley, supra,* 210 Cal.App.2d 313, 321; *Endo* v. *State Board of Equalization, supra,* 143 Cal.App.2d 395, 399.) ■ In making this determination our inquiry is whether upon viewing the evidence adduced before the Board in the light most favorable to Liquori and indulging in all reasonable inferences to support the Board's findings, there exists any evidence, contradicted or otherwise, which supports the Board's conclusion "that there was an unlawful discharge due to a coerced resignation induced by improper conduct on the part of superior officers in the Police Department." (See *Clark* v. *Gibbons,* 66 Cal.2d 399, 402 [58 Cal.Rptr. 125, 426 P.2d 525];

---

[3]Under other provisions of this section as to certain employees this power may be exercised by other officials; but as to police it may only be exercised by the city manager.

[4]In his petition in the court below plaintiff alleges that "Said resignation was duly accepted," and that he is "aggrieved" by the decision of the Board "in that said decision would require him to reinstate a former employee of the City whose resignation was accepted on June 11, 1968, . . ."

*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal. 2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

In *Moreno, supra,* it is stated that "Whenever a person is severed from his employment by coercion the severance is effected not by his own will but by the will of a superior. A person who is forced to resign is thus in the position of one who is discharged, not of one who exercises his own will to surrender his employment voluntarily." (20 Cal.2d 531, 534-535.) ■ Accordingly, where one seeks to rescind a resignation he invokes Civil Code sections 1688 and 1689[5] providing for the extinguishment of a contract by rescission, on the basis that the resignation was coerced. He is in effect asserting that his consent had not been real or free within the meaning of Civil Code section 1567[6] but that it had been obtained through duress, menace, fraud, undue influence or mistake. (*Odorizzi* v. *Bloomfield School Dist.,* 246 Cal. App.2d 123, 127 [54 Cal.Rptr. 533].) In the present case no contention is made that Liquori's resignation was given by mistake or that it was obtained through menace or fraud, but it is asserted by Liquori that there was substantial evidence that it was obtained through duress and undue influence.

■ Civil Code section 1569, in relevant part, defines duress as either the "1. Unlawful confinement of the person of the party, or . . . 3. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harassing or oppressive." Duress envisions some unlawful action by a party by which one's consent is obtained through fear (see *Odorizzi* v. *Bloomfield School Dist., supra,* 246 Cal.App.2d at p. 128) or threats (see *Goldstein* v. *Enoch,* 248 Cal.App.2d 891, 894 [57 Cal.Rptr. 19]; *Leeper* v. *Beltrami,* 53 Cal.2d 195, 203 [1 Cal.Rptr. 12, 347 P.2d 12]; *Lewis* v. *Fahn,* 113 Cal.App.2d 95, 99 [247 P.2d 831]; *London Homes, Inc.* v. *Korn,* 234 Cal.App.2d 233, 240 [44 Cal.Rptr. 262].) ■ Here there is no evidence that Brown or any of the other officers acted unlawfully. Liquori was not unlawfully confined. His claim that Brown's refusal to let him think things over does not reasonably suggest that Liquori was not free to leave or that force would be used on him if he attempted to leave. There is no evidence of any threats by the police or that the charge of rape was false. In sum, the police were proceeding along a wholly legal course of action, that is, the investigation of an officer who had been charged with rape and alleged to have conducted himself in a manner unbecoming a police officer. Accordingly, there was no evidence of duress as a ground for rescission.

---

[5]Civil Code section 1688 provides that "A contract is extinguished by its rescission." Civil Code section 1689, subdivision (b)(1) provides, in pertinent part, that a contract may be rescinded "If the consent of the party rescinding, . . . was given by mistake, or obtained through duress, menace, fraud, or undue influence, . . ."

[6]Civil Code section 1567 provides that an apparent consent is not real or free when obtained through: "1. Duress; 2. Menace; 3. Fraud; 4. Undue influence; or 5. Mistake."

■  Directing our attention to undue influence we first note that Civil Code section 1575 defines undue influence, in relevant part, as "taking an unfair advantage of another's weakness of mind; or . . . taking a grossly oppressive and unfair advantage of another's necessities or distress." We observe further that direct evidence of undue influence is rarely obtainable and, thus the court is normally relegated to determination by inference from the totality of facts and circumstances. (*Wells Fargo Bank* v. *Brady,* 116 Cal.App.2d 381, 399 [254 P.2d 71]; *Beckmann* v. *Beckmann,* 174 Cal. App.2d 717, 721 [345 P.2d 121]; *Stewart* v. *Marvin,* 139 Cal.App.2d 769, 775 [294 P.2d 114].) Indeed, there are no fixed definitions or inflexible formulas. Rather, we are concerned with whether from the entire context it appears that one's will was overborne and he was induced to do or forbear to do an act which he would not do, or would do, if left to act freely. (*Estate of Bixler,* 194 Cal. 585, 590 [229 P. 704]; *Webb* v. *Saunders,* 79 Cal.App. 2d 863, 871 [181 P.2d 43].)

In *Odorizzi* a school teacher, charged with homosexual activity, resigned his teaching position after the principal and district superintendent came to his house and told him that the charges would be made public if he did not resign. Thereafter, the charges were dropped and the teacher filed a suit for reinstatement alleging that his resignation had been wrongfully coerced. In reversing a judgment of dismissal after demurrer to an amended complaint was sustained without leave to amend, the reviewing court held that the complaint stated a cause of action that the plaintiff's consent to the transaction had been obtained through the use of undue influence. (246 Cal.App.2d at p. 130.) The appellate court observed that undue influence in the sense there concerned consisted of "persuasion which tends to be coercive in nature, persuasion which overcomes the will without convincing the judgment. [Citation.]" (At p. 130.) "The hallmark of such persuasion," said the court, "is high pressure, a pressure which works on mental, moral, or emotional weakness to such an extent that it approaches the boundaries of coercion. In this sense, undue influence has been called overpersuasion. [Citation.]" (At p. 130; see also *Estate of Ricks,* 160 Cal. 467, 480-482 [117 P. 539]; *Stenger* v. *Anderson,* 66 Cal.2d 970, 979 [59 Cal.Rptr. 844, 429 P.2d 164].) ■  In essence, undue influence consists of the use of excessive pressure by a dominant person over a servient person resulting in the apparent will of the servient person being in fact the will of the dominant person. (*Odorizzi* v. *Bloomfield School Dist., supra,* at p. 131.)

The undue susceptibility to such overpersuasive influence may be the product of physical or emotional exhaustion or anguish which results in one's inability to act with unencumbered volition. (*Odorizzi* v. *Bloomfield School Dist., supra,* 246 Cal.App.2d 123, 131; see *Faulkner* v. *Beatty,* 161 Cal.App.2d 547, 551 [327 P.2d 41]; *Stewart* v. *Marvin, supra,* 139 Cal.

App.2d 769, 775; *Weger* v. *Rocha,* 138 Cal.App. 109, 114-115 [32 P.2d 417].) ▮ In any event, as observed in *Odorizzi,* overpersuasion is generally accompanied by certain characteristic elements which, when simultaneously present in a significant number, characterize the persuasion as excessive. These elements are "(1) discussion of the transaction at an unusual or inappropriate time, (2) consummation of the transaction in an unusual place, (3) insistent demand that the business be finished at once, (4) extreme emphasis on untoward consequences of delay, (5) the use of multiple persuaders by the dominant side against a single servient party, (6) absence of third-party advisers to the servient party, (7) statements that there is no time to consult financial advisers or attorneys." (*Odorizzi* v. *Bloomfield School Dist., supra,* at p. 133.)

▮ In the instant case the circumstances were such that the Board, as the trier of fact, could conclude from the evidence adduced that the elements of overpersuasion numbered (1), (2), (3), (5), and (6) were present. Of particular significance is the evidence that Liquori was called to police headquarters on three successive days, was kept waiting for long periods of time, was interrogated by a member of the homicide squad, and on the third day was ordered to appear before Brown, who, although already advised that the charges had been dropped, proceeded to read the statements regarding the charges and asked Liquori what he was going to do, emphasizing simultaneously that the charges should not be made public and suggesting that Liquori was guilty of unofficer-like conduct. Liquori was not given any time to consider what he wanted to do and was repeatedly asked what he was going to do about the situation. There was also evidence that at the time he signed his resignation Liquori was emotionally upset and that he was physically fatigued because he had not slept for 24 hours. These facts reasonably lend themselves to the inference that excessive pressure was used to persuade Liquori, who was vulnerable to such pressure by Brown, a dominant person, so as to overcome Liquori's will without convincing his judgment. In reaching this conclusion, we are aware that the evidence is amenable to contrary inferences or conclusions. But our function, as was that of the trial court, is not to reach a conclusion contrary to that of the Board but to determine whether there is substantial evidence in the light of the whole record to sustain the finding of the Board. We conclude that there was substantial evidence of undue influence and accordingly that the Board was entitled to conclude therefrom that Liquori's resignation was coerced.

The judgment is reversed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied October 21, 1970, and the petition of the plaintiff and respondent for a hearing by the Supreme Court was denied November 18, 1970.