[No. C031652. Third Dist. Jan. 21, 2000.]

THOMAS ROBISON, Plaintiff and Appellant, v.
CITY OF MANTECA, Defendant and Respondent.

454

**COUNSEL**

Law Offices of Herman C. Meyer, Meyer & Gross, Herman C. Meyer and
Malcolm D. Gross for Plaintiff and Appellant.

Whitmore, Johnson & Bolanos, Richard C. Bolanos and Jack W. Hughes for
Defendant and Respondent.

**OPINION**

**DAVIS, P. J.**—After the superior court sustained a demurrer to his initial
pleading, plaintiff Thomas Robison filed an amended petition for a tradi-
tional writ of mandate directing defendant City of Manteca to reinstate him
to his position as "Refuse Collector Worker II." This time, the superior court
sustained the defendant's demurrer without leave to amend. We dismissed

the plaintiff's invalid appeal from this order. (*Robison v. City of Manteca* (Apr. 16, 1998, C027876) [nonpub. opn.].) The plaintiff now properly appeals from the subsequently entered judgment. We shall affirm.

## BACKGROUND

On appeal from a demurrer, we assume the truth of all *well-pled* factual allegations of the amended complaint, which do not include legal conclusions. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890 [33 Cal.Rptr.2d 838].)

The plaintiff was a refuse collector in the defendant's department of public works (DPW) since 1991. After conducting a random drug test in December 1995, the defendant notified the plaintiff he had tested positive for controlled stimulants. He requested a confirmation test and screening of his medications. However, in the interim his employee-organization representative (Steve Conway), in coordination with the DPW director, coerced him into executing a "recovery agreement" with the defendant. On the date of execution, they did not advise him to seek counsel, they did not review the document's provisions, and they presented it to him turned to the signature page. The agreement required him to undertake a substance-abuse treatment plan, and waived his right to appeal any discipline, including separation from service, to the defendant's personnel board.

Following a preseparation meeting (*International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 207-208 [193 Cal.Rptr. 518, 666 P.2d 960] (*IBEW*))[1] on July 3, 1996[2], the defendant notified the plaintiff that it would be firing him effective July 8, 1996, for the reason stated in its April 24 "Notice of Proposed Disciplinary Action": " 'Failure to comply with the . . . Recovery Agreement . . . .' "

Curiously, the July 3 letter—which the plaintiff chose to incorporate in the petition—contradicts his allegations in a number of respects. In responding to issues the plaintiff raised at the *IBEW* hearing, it states the circumstances under which he signed the recovery agreement were irrelevant; the plaintiff failed both the original *and* the confirmation drug tests, the results of which the doctor *had* sent to the plaintiff before the hearing; the doctor confirmed for the defendant on July 3 that the over-the-counter medication which the

---

[1]Although the plaintiff cites *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774], as the basis for the right to a preseparation meeting, *Skelly* itself involves only civil-service workers; *IBEW* extended the *Skelly* principle to all permanent public employees subject to firing only for cause.

[2]While the amended petition references the July 3 letter, in the record on appeal it does not appear as an exhibit to that pleading. However, it *is* appended to the original pleading.

plaintiff used would not result in a false positive, and the doctor had provided this information to the plaintiff; and the plaintiff had met only once with a counselor to develop a rehabilitation plan, then called to cancel any further meetings, stating he "did not have to follow through with the plan." Concluding the plaintiff had not offered any excuse for not complying with the recovery agreement, the defendant stated there was no choice but to fire him. It noted he had waived his right to an appeal to the personnel board.[3]

In a mélange of doctrines, the petition alleges several bases for mandate. It first claims the defendant's conduct was in excess of its jurisdiction, because it denied the plaintiff due process when it did not allow him to make an informed decision regarding the recovery agreement. It then claims the defendant failed to grant him a fair trial, because it had not given him the results of the screening of his medications prior to the *IBEW* meeting, and used evidence not disclosed to him before that meeting as the basis of its decision to fire him. Finally, it claims the defendant prejudicially abused its discretion in that (1) it did not establish a violation of its drug-testing program before requiring him to participate in a substance-abuse program, (2) it did not properly screen his medication or disclose the results of the screening before his *IBEW* hearing, (3) it did not give him notice of all facts and charges prior to the *IBEW* hearing, and (4) it lacked evidence in support of its decision, in that there was no proof of an actual drug-policy violation, or of an actual recovery program in which he willingly failed to participate.

The superior court issued a lengthy statement of decision in ruling on the demurrer. In a nutshell, it found the plaintiff executed a valid recovery agreement, and the July 3 letter established as a matter of law that the defendant had not acted in an arbitrary and capricious manner. It further concluded the plaintiff had failed to demonstrate a reasonable probability that leave to amend could cure the defects in his pleading. The court noted that in reaching its decision, it had considered extrinsic evidence contained in a declaration by the plaintiff (that was attached to his points and authorities filed in support of the merits of the petition) only for the purposes of determining whether to grant leave to amend.[4]

## DISCUSSION

We determine the sufficiency of the amended petition de novo. (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 13 [22 Cal.Rptr.2d 229].)

[3]The petition also alleges the July 3 letter failed to provide any notice of his rights to judicial remedies, but the plaintiff has never developed any argument in this regard.

[4]Consequently, we reject the plaintiff's cursory concluding argument that the superior court denied him the right to a trial on the merits of his petition when it considered this evidence. This review *presumed the truth* of the extrinsic evidence and found it insufficient.

■ The focus in a review of a local agency decision—in a matter in which there was no administrative hearing—is whether the allegations establish an arbitrary and capricious decision. (*Bright Development v. City of Tracy* (1993) 20 Cal.App.4th 783, 795 [24 Cal.Rptr.2d 618]; *Thelander v. City of El Monte* (1983) 147 Cal.App.3d 736, 748 [195 Cal.Rptr. 318].)

It behooves us as a preliminary matter to blow the chaff from the plaintiff's appellate contentions. Although the plaintiff is preoccupied with whether he sufficiently alleged a failure to prove he had violated a proper work-related drug policy in December 1995, the July 3 letter—made part of the amended petition by the plaintiff—establishes that the basis for his dismissal was his failure to comply with the recovery agreement. If the plaintiff entertained serious doubts about the validity or job-relatedness of the drug tests, he could have refused to execute the agreement and forced the defendant to justify the resulting discipline. Instead, the plaintiff chose to accede to this condition of further employment. He has thus mooted the underlying basis for requiring the agreement and we do not consider it further in the context of his remaining arguments.

The only pertinent contentions on appeal are whether he has alleged a basis to void the recovery agreement, whether the defendant properly conducted the *IBEW* hearing, and whether dismissal was an abuse of discretion. We now turn to these issues.

I

■ The plaintiff contends the circumstances under which he executed the recovery agreement constituted "undue influence" and "unconscionability." He furthers argues in an aside that there is no evidence of a knowing and intelligent waiver of his due-process rights.

A

With respect to undue influence, he cites *Keithley v. Civil Service Bd.* (1970) 11 Cal.App.3d 443 [89 Cal.Rptr. 809]. ■ *Keithley* distilled the principle of undue influence as being "the use of excessive pressure by a dominant person over a servient person resulting in the apparent will of the servient person being in fact the will of the dominant person." (*Id.* at p. 451.) The criteria which, *when simultaneously present in a significant number* determine the existence of undue influence, include an *unusual or inappropriate time and location* for discussing and consummating a contract; *multiple negotiators* for the dominant party and an *absence of independent advisers* for the servient party; and an *insistence on immediate consummation*

of the contract *without opportunity for third party review*, coupled with *excessive threats* regarding the *consequences of delay*. (*Id.* at p. 452.)[5]

■   The short answer to this argument is found in the complete absence of *any* allegations coming within these criteria. In purely conclusory fashion, plaintiff passively alleged he "was coerced" by representative Conway "and informed" [*sic*] by the DPW director into signing the agreement without any review of the provisions on the date of execution, which according to the July 3 letter was two months after the original drug test. In the absence of any additional *factual* allegations, this is inadequate to establish undue influence.

Even if we accept the truth of his declaration for purposes of assessing the denial of leave to amend, the declaration shows that representative Conway interceded after the defendant sent a notice of intent to dismiss the plaintiff on January 4, 1996, for a violation of the defendant's drug policy, and persuaded the DPW director instead to offer the recovery agreement in a memo to the plaintiff on January 19;[6] the plaintiff had until February 14 to review the agreement, at which time the defendant told him he had two *more* days to decide to sign it or accept dismissal. On the day he was to execute the agreement, his representative "strongly advised" him to sign it or face immediate termination, which far from being any species of "coercion" was no more than a reiteration of the choice presented in the February 14 letter and an accurate summation of the plaintiff's situation. Significantly, he never affirmatively represents under penalty of perjury that anything prevented him from reviewing the agreement before February 16 or consulting with an attorney. As these facts would not establish circumstances approaching undue influence, leave to amend on this basis would be an idle act.

### B

The claim of unconscionability is also lacking in merit.   ■   A contract is enforceable unless it is *both* procedurally and substantively unconscionable. (Civ. Code, § 1670.5; *24 Hour Fitness, Inc. v. Superior Court* (1998)

---

[5]The fact-specific nature of this inquiry means the underlying facts in *Keithley* have little relevance (cf. *State Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188, 202 [38 Cal.Rptr.2d 98]) and in any event present far more egregious circumstances: A police officer accused of rape, whose superiors ignored him for three days (during which time homicide officers interrogated him) before meeting with him to suggest that despite the charges being dropped he should resign for unbecoming conduct or else the matter would become public. (*Keithley v. Civil Service Board, supra*, 11 Cal.App.3d at p. 447.)

[6]In its decision, the superior court noted the plaintiff's lawyer stated for the first time at the hearing on the demurrer that the plaintiff did not receive a copy of the agreement with the memo. This self-serving representation is belated and not properly part of the record by any standard.

66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533].) Procedural uncon-scionability requires an inequality in bargaining power accompanied by lack of disclosure of material provisions. (*Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1296 [22 Cal.Rptr.2d 20].) Substantive unconscionability is an allocation of the burdens and benefits which is so one-sided as to shock the conscience. (*24 Hour Fitness, Inc., supra,* 66 Cal.App.4th at p. 1213.)

■■■ The plaintiff fails to establish the former element. The only "surprise" he alleges is the absence of an appeal to the personnel board if dismissed for failure to comply with the agreement (even assuming he established uneven bargaining power). This is not a provision even remotely material to his dismissal for refusal to participate in a substance-abuse program. Moreover, there is no allegation he was *prevented* from reading the agreement on the day of execution, only that it was open to the signature page. There is no evidence these shortcomings can reasonably be overcome in an amended pleading, because we have noted above that there is nothing in his declaration which would establish surprise at a material term, and the provision is not obscured in any respect in the agreement itself.[7] In the absence of any procedural unconscionability, we need not consider substantive unconscionability.

C

The defendant also claims there is no evidence he made a knowing and intelligent waiver of his due process rights.[8] As we have noted in connection with his previous two arguments, he has never alleged he was prevented at

---

[7]The second paragraph of the agreement (which is in the same size type as the rest of the two-and-one-half-page, 10-paragraph document) states, "If Employee fails to fulfill any provisions of this Agreement, employee will be terminated from employment. Prior to termination, the employee's Department Manager will discuss provision violations with the Employee. The Department Manager, at his/her discretion, will then decide if the provisions of this Agreement have been violated. Before the termination is finalized, the City Manager or designee will review the employee's written response and will indicate the appropriate disciplinary action. The Employee gives up the right to appeal the termination to the Personnel Board. It is agreed that no further attempt to enroll the employee in a rehabilitation program will be made by the City. Employee hereby waives the right to appeal this Agreement to the Personnel Board."

[8]In this regard, the plaintiff suggests there is a "serious" question whether he is *permitted* to waive his due process rights. In light of the fact a criminal defendant may plead guilty and waive the entire panoply of constitutional rights, this is an untenable proposition.

He supports it only with a citation to a wholly irrelevant case involving the extent of the Legislature's power to *impose* the consequence of an "automatic" resignation (Gov. Code, § 19996.2) for unexcused absences (*Zike v. State Personnel Bd.* (1983) 145 Cal.App.3d 817, 823 [193 Cal.Rptr. 766]), a case the Supreme Court later disapproved to the extent *Zike* required the full set of due-process protections involved in dismissals (*Coleman v. Department*

any time from reading the agreement before February 16, nor does his declaration contain any facts from which we can determine it was not possible for him to do so. He does not provide any relevant authority for a requirement of affirmative evidence of admonitions and explicit waivers.[9] In addition, he does not articulate any manner in which these waived rights are material to his dismissal. We therefore reject this basis for disavowing his agreement.

## II

We also reject plaintiff's argument regarding the defendant's failure to comply with *IBEW* protections. The argument borders on the frivolous. Once again, the allegations in his petition are too conclusory and vague to establish any violation; nor do the facts in his declaration demonstrate a possibility of successful amendment.

The defendant notified the plaintiff on April 24, 1996, it intended to fire him for failure to comply with the agreement. Although there is a dispute between the plaintiff and the substance-abuse counselor regarding the substance of their conversation, by incorporating the July 3 letter the plaintiff admits he had the opportunity to present his version of their interaction at his *IBEW* hearing, thus it is irrelevant that he alleged the defendant contacted the counselor after the hearing for the contrary version.

He also argues the July 3 letter shows the defendant forced him to prove a negative at the *IBEW* hearing when it states, "At no time during the last four months did you submit any documentation or evidence supporting your position that you were not under the influence of drugs on December 14, 1995." However, this was a mere aside, part of the defendant's response that his continued denial of drug use was *irrelevant* in light of the fact he had executed the recovery agreement and failed to abide by it. Ignoring his allegations, which otherwise beat the deceased drug test horse, he does not allege any other deprivation of due process. We therefore reject this argument.

---

*of Personnel Administration* (1991) 52 Cal.3d 1102, 1123, fn. 8 [278 Cal.Rptr. 346, 805 P.2d 300]). We are not obliged to consider the argument any further. (*People v. Gidney* (1937) 10 Cal.2d 138, 142-143 [73 P.2d 1186].)

[9]He cites *Isbell v. County of Sonoma* (1978) 21 Cal.3d 61 [145 Cal.Rptr. 368, 577 P.2d 188], which held a court cannot constitutionally *enter judgment* based on a confession-of-judgment clause (Code Civ. Proc., §§ 1132-1134) absent evidence of an express waiver of notice and opportunity to be heard. The present context neither involves those particular due process concerns, nor involves a document that would result in a *judgment* against the plaintiff.

## III

Having determined the validity of the recovery agreement and the propriety of the *IBEW* procedure, we are left with the question of whether it was arbitrary and capricious to fire the plaintiff. As the July 3 letter itself points out, the plaintiff did not comply with the agreement by participating in a recovery plan, and did not present any evidence to the defendant in excuse (such as frustration of his efforts to comply) other than his moot disagreement with the original basis for the requirement. He complains the decision to fire him is a knee-jerk reaction which takes nothing else about his employment record into consideration. While reasonable minds differ over the value of "zero-tolerance" policies in various contexts, it is nonetheless a policy choice which is neither arbitrary nor capricious. "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Constancio v. State Personnel Bd.* (1986) 179 Cal.App.3d 980, 990-991 [225 Cal.Rptr. 133].) The overriding consideration is whether the conduct could result in harm to the public service. (*Ackerman v. State Personnel Bd.* (1983) 145 Cal.App.3d 395, 399 [193 Cal.Rptr. 190].) Given that the plaintiff drives one of the defendant's vehicles in the course of his employment, we will not require the defendant to await a drug-related accident before it can fire an employee recalcitrant about a drug treatment program. The plaintiff cannot plead around this fundamental flaw in his amended petition.

DISPOSITION

The judgment is affirmed.

Raye, J., and Kolkey, J., concurred.