[No. H034196. Sixth Dist. Sept. 29, 2010.]

BILL CHAN, Plaintiff and Appellant, v.
CRAIG T. LUND et al., Defendants and Respondents.

COUNSEL

Law Offices of Bruce Tichinin and Bruce Tichinin for Plaintiff and Appellant.

Stenberg, Sunseri, Roe, Pickard & Rudy and Salvatore J. Sunseri for Defendant and Respondent Craig T. Lund.

Simoncini & Associates, Kenneth D. Simoncini and Kerri A. Johnson for Defendant and Respondent Norma Gonzalez dba Norma Tree Service.

OPINION

**DUFFY, J.**—This five-year-old dispute arises out of the cutting of a number of Leyland cypress trees on Bill Chan's Los Altos property adjacent to a fence separating his property and the property of Craig T. and Kathleen Lund (the Lunds). The Lunds hired an unlicensed tree contractor, Norma Gonzalez, doing business as Norma Tree Service (Norma Tree), to trim the trees, which had branches that extended onto the Lunds' property. Chan brought suit against the Lunds and (later) Norma Tree. The lawsuit was purportedly settled on the eve of trial in August 2008 in proceedings before a mediator, and the terms of the purported settlement were reduced to writing. Shortly thereafter, Chan discharged his attorney, hired new counsel, and claimed that his consent to the purported settlement was obtained through economic duress, undue influence, and fraud employed by his former attorney. The

court granted the Lunds' and Norma Tree's motions to enforce settlement under Code of Civil Procedure section 664.6, and Chan appealed from the judgment entered thereon.

Chan makes a number of arguments on appeal. He argues, among other things, that because his former attorney extorted Chan's consent to the settlement, the purported agreement is void, and therefore enforcement of the settlement contravenes public policy. He contends further that he is entitled to rescind any agreement of settlement under theories of economic duress, undue influence, and fraud. Chan also asserts that Evidence Code provisions concerning the confidentiality of communications during mediation and pre-cluding testimony by the mediator in subsequent proceedings are unconstitutional under the due process clause of the United States and California Constitutions as applied in this instance, because such mediation confidentiality deprived him of the ability to present evidence (i.e., the mediator's testimony) to establish that Chan's consent to the settlement was coerced.

We conclude that the court did not err in enforcing the settlement and will affirm the judgment.

## PROCEDURAL BACKGROUND

Chan filed a complaint against the Lunds on October 5, 2006. He alleged claims for trespass and negligence, averring that his damages were at least $78,000. Chan also asserted that defendants' actions constituted wrongful injuries to trees in violation of Code of Civil Procedure section 733 and Civil Code section 3346, subdivision (a), entitling him to treble damages. He later amended his complaint to identify Norma Tree as a defendant previously referred to as Doe 1, claiming that Norma Tree was the contractor hired by the Lunds to cut and trim the row of 14 Leyland cypress trees on Chan's property.[1]

Trial was set for August 4, 2008.[2] The court vacated the scheduled mandatory settlement conference and permitted the parties to continue settlement negotiations with a mediator, Kevin Kelly. The record reflects that the court thereafter scheduled the case for a dismissal hearing based upon its having received notice of a settlement. On September 22, Chan filed a substitution of attorney, substituting Bruce Tichinin in place of his former attorney. In October, the Lunds and Norma Tree filed separate motions to enforce settlement pursuant to Code of Civil Procedure section 664.6. It was asserted in both motions that on August 4, the parties attended a mediation

---

[1] The Lunds and Norma Tree are hereafter collectively referred to as defendants.

[2] All dates are 2008 unless otherwise stated.

before Kelly and that on that date, a settlement was achieved (the Settlement) that resulted in the creation of a writing memorializing the settlement (the Settlement Memorandum).[3] The Settlement Memorandum (captioned "Confirmation of Settlement as a Result of Mediation") recited that the parties "have reached a full and final settlement of all of the claims of said plaintiff in said case," and that Chan would be paid a total of $36,100 by two insurance carriers in full settlement of known and unknown claims that he had in the case.[4]

Chan opposed the motions. As discussed in greater detail below, he contended that the Settlement was voidable because his purported consent was "wrongfully coerced" through tactics of his former attorney that "amounted legally to duress, undue influence, fraud, prohibited financial dealing with a client in violation of the [California] Rules of Professional Conduct, and undisclosed dual agency."[5] (Hereafter, all rules are the State Bar of California Rules of Professional Conduct unless otherwise specified.) The attorney's alleged coercion was essentially twofold. First, he allegedly threatened on the eve of trial to withdraw from the case if Chan refused to participate in a further session with Kelly or if Chan refused to make concessions to settle the matter. Chan alleged that his attorney failed to advise him at the time he made these threats that he would be required to obtain court approval to withdraw from the case and that there were ethical rules prohibiting such withdrawal where reasonable steps are not taken to avoid prejudicing the client's rights. Second, during mediation, the attorney allegedly induced Chan to accept the Settlement by agreeing to discount his fees by $10,000 in exchange for Chan's agreement.

After a hearing, the court announced orally on November 13 that it would grant the motions to enforce settlement as to the terms of the monetary settlement recited in the writing.[6] The court observed further that although the writing recited a stipulation for injunctive relief that the parties contemplated finalizing in the future, there was no complete agreement concerning such stipulation that could be enforced.

---

[3] We use "Settlement" and "Settlement Memorandum" as terms of art to refer to the purported settlement of the parties after mediation on August 4 and the confirmation in writing thereof, respectively. In using these terms as a matter of convenience, we acknowledge that Chan disputes the enforceability of the Settlement as described in this appeal.

[4] Of the total settlement funds, $11,100 was to be paid by State Farm Insurance Company on behalf of the Lunds, and $25,000 was to be paid by Colony Insurance Company on behalf of Norma Tree.

[5] As discussed, *post*, Chan renews these arguments on appeal, save the undisclosed dual agency claim, which has therefore been abandoned. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317].)

[6] The joint appendix contains no contemporaneous minute order confirming the court's announcement of its decision from the bench.

On or about November 25, Chan, through his new attorney, Tichinin, filed an ex parte application (first ex parte application) for an order that the court on its own motion reconsider its decision (see *Le Francois v. Goel* (2005) 35 Cal.4th 1094 [29 Cal.Rptr.3d 249, 112 P.3d 636]). He asserted that there was additional evidence—namely, correspondence to Chan from his prior counsel—that corroborated Chan's claim that the attorney had offered to reduce his fees by $10,000. On or about December 11, Tichinin supplemented the first ex parte application with a lengthy letter brief, arguing that the court should reconsider its decision for the additional reason that he "believed" that if the mediator, Kelly, were allowed to testify, he would further corroborate Chan's declaration that his attorney at the mediation threatened to abandon Chan if Chan refused to make concessions to settle the case. On December 22, the court denied Chan's first ex parte application.

On March 11, 2009, Tichinin filed a second ex parte application for an order that the court on its own motion reconsider its decision (second ex parte application). In it, Tichinin expressed a concern that he had not previously communicated to the court adequately that an additional basis for reconsideration (beyond the corroboration that Chan's former attorney had agreed to discount his fee) was that Tichinin "was making an offer of proof that Mr. Kelly's constitutionally-admissible testimony would corroborate Mr. Chan's testimony that [his attorney] threatened to abandon him at trial the next day in the manner described in Mr. Chan's declaration." (Original underscoring.) On March 11, 2009, the court denied the second ex parte application, and filed a formal order granting the motions to enforce settlement and entering judgment on that order. Chan filed a timely notice of appeal.

## DISCUSSION

### I. *Motions to Enforce Settlement Under Code of Civil Procedure Section 664.6*

Code of Civil Procedure section 664.6 provides as follows: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

The Second District Court of Appeal, Division Two, has succinctly described the nature of motions brought pursuant to Code of Civil Procedure section 664.6: "Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit. [Citations.] . . . Although a judge hearing a section 664.6 motion may

receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809–810 [71 Cal.Rptr.2d 265]; see also *Terry v. Conlan* (2005) 131 Cal.App.4th 1445 [33 Cal.Rptr.3d 603] [court erred in granting § 664.6 motion where record demonstrated no meeting of minds concerning material terms of settlement].)

The trial court's factual findings on a motion to enforce a settlement under Code of Civil Procedure section 664.6 "are subject to limited appellate review and will not be disturbed if supported by substantial evidence." (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162 [64 Cal.Rptr.2d 571].) In instances involving questions of law, including the construction and application of the statute, the trial court's decision is not entitled to deference and will be subject to independent review. (*Ibid.*) For example, where the principal claim of error "raises a question of law concerning the construction and application of [Code of Civil Procedure] section 664.6[,] . . . it requires independent appellate review. [Citations.]" (*Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1116 [127 Cal.Rptr.2d 370], fn. omitted (*Gauss*).)

## II. *Challenge to Order Enforcing Settlement*

### A. *Background and Contentions*

#### 1. *Chan's declaration*

In his declaration in opposition to defendants' motions to enforce settlement, Chan stated by way of background that between October 2007 and July 2008, the parties had held four mediation sessions before Kelly. Chan noted that "[a]t these sessions, the parties agreed provisionally to monetary settlement at the monetary amounts" set forth in the later written confirmation of Settlement of August 4. But he went on to declare that "[t]he provision required to make the monetary amounts effective was that agreement would also be reached as to the terms of a stipulation for an injunction concerning the rights and duties of the parties regarding trees on [Chan's] property in the future." Chan's attorney had prepared a draft stipulation in May, but the counterproposal from the Lunds, Chan felt, was "so severely invasive of [his] rights that" progress toward agreement on the form of a stipulation for injunction ceased.

Ten days before trial, on July 25, while Chan was attending an expert witness deposition, the Lunds' attorney indicated that there would be a delay in trial because there was going to be another mediation session; after Chan's attorney indicated his agreement, Chan objected to the mediation. Chan renewed his objection to his attorney privately after the deposition concluded, telling him that he assumed Kelly expected to be paid; Chan indicated, "I won't pay and I won't attend." (Italics omitted.) On August 3, while preparing for trial, Chan again told his attorney that he refused to attend the mediation the next day. The attorney told him that it would reflect badly on his reputation and "the Judge in the case would give him a hard time at trial" if Chan did not attend the mediation. Chan suggested that he wanted to speak directly with the court; his attorney said that the court would not speak with Chan and that if he did not attend the mediation, he would not represent him at trial and he would be self-represented. He did not disclose to his client that he could not withdraw from representing him without court permission and that rule 3-700 required that he take reasonable steps to avoid foreseeable prejudice to his client before withdrawing.

Chan attended the mediation session before Kelly on August 4; he went there to find out whether his attorney was going to represent him at trial the next day if Chan's settlement position remained that he would not agree to terms other than those in the draft stipulation his attorney had prepared in May. Because his attorney confirmed that he would represent him at trial, Chan stayed. After Kelly arrived and discussed concessions that the Lunds were willing to make, Chan responded that he would only approve the stipulation as prepared by his counsel in May. Chan's attorney then "stated that [Chan] was not negotiating, and that he would not represent [Chan] at trial the next day." Chan then responded that he intended to leave so that he could find new counsel. Kelly asked Chan to stay until he could inform the other participants and he then returned with a new proposal that involved settling the monetary portion of the case and leaving the case open as to the stipulation for injunction with the Lunds.

At that point, the attorney—without rescinding his threat to abandon Chan if the matter proceeded to trial—sought to induce Chan to settle both the monetary aspects of the case and the stipulation for injunction by agreeing to discount his fee by $10,000, if Chan would agree to the terms set forth in the writing confirming the Settlement. Chan declared that because he was afraid that his attorney "would carry out his renewed threat not to represent [Chan] at trial the next day," and because Chan was ignorant of the requirements of rule 3-300 concerning an attorney having a business transaction with his or her client, Chan signed the Settlement Memorandum. Chan declared that he did so "against [his] will and better judgment" only due to his attorney's

threat to withdraw and because he was unaware of the Rules of Professional Conduct.[7]

## 2. *Chan's contentions*

Chan contends that the court erred in granting defendants' motions to enforce settlement under Code of Civil Procedure section 664.6. He asserts that because his consent was the result of extortion, the Settlement constituted a void contract that was unenforceable. Chan also contends that his attorney's actions constituted economic duress, undue influence, fraud, and an invalid business transaction between an attorney and his client. Since his consent to the Settlement was procured by the attorney's unlawful conduct, Chan asserts that he was entitled to rescind the Settlement Memorandum. Chan argues further that although mediators are generally prohibited by statute from testifying about any statement or conduct occurring at mediation in a subsequent proceeding (Evid. Code, § 703.5),[8] and no party may compel such testimony of a mediator (Evid. Code, § 1127),[9] the application of statutes enforcing such mediation confidentiality here deprived him of due process because Kelly's testimony would have corroborated Chan's claim that his purported consent to the Settlement was coerced.

Chan asserts that we are required to review the trial court's decision independently because his opposition to the motions and the court's rejection of that opposition were founded on questions of law rather than fact.[10] In

---

[7] Chan filed a petition for rehearing, arguing, inter alia, that evidence of coercive statements allegedly made at the mediation was inadmissible under Evidence Code section 1119, subdivision (a). No party asserted an objection below, nor did Chan challenge this evidence (from his own declaration) in his briefs on appeal. We need not consider Chan's argument or his belated evidentiary objection. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) Without this evidence, Chan's factual showing in opposition to enforcement of the Settlement would evaporate; the result in this case would therefore be the same had we not considered it. Accordingly, in addressing Chan's claims, *post*, we will assume, arguendo, that Chan's evidence is not inadmissible.

[8] "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding . . . ." (Evid. Code, § 703.5.)

[9] "If a person subpoenas or otherwise seeks to compel a mediator to testify or produce a writing, . . . and the court or other adjudicative body determines that the testimony or writing is inadmissible under this chapter, or protected from disclosure under this chapter, the court or adjudicative body making the determination shall award reasonable attorney's fees and costs to the mediator against the person seeking the testimony or writing." (Evid. Code, § 1127.)

[10] Chan bases this argument largely upon the assertion that, based upon the comments of the court at the hearing on the second ex parte application, the court viewed itself as deciding a question of law. But " '[a]n oral . . . opinion by a trial judge, discussing and purporting to decide the issues, . . . is merely an informal statement of his views. . . . [I]t is not itself the

contrast, Norma Tree argues that the court's decision here is governed by the substantial evidence standard.[11] In its order, the trial court did not specifically indicate the basis for its conclusion that the Settlement—at least as to the monetary terms—should be enforced. It therefore may have concluded that the Settlement on its face was enforceable under Code of Civil Procedure section 664.6, and that, Chan's declaration notwithstanding, it did not believe that Chan was subjected to duress from his attorney. Alternatively, the court may have concluded that, even assuming the truth of everything stated in Chan's declaration, he was nonetheless not legally entitled to rescind or avoid the Settlement. The latter conclusion—which appears to be the more likely reasoning of the court—involves questions of law as to the potential application of Chan's arguments in opposition to enforcement of the Settlement that would be subject to de novo review. (*Gauss, supra,* 103 Cal.App.4th at p. 1116.)

We address Chan's contentions below, applying principally a de novo standard of review in deciding whether, assuming that his attorney threatened to withdraw as his counsel and offered to discount his fee as detailed in Chan's declaration, Chan was entitled to rescind or avoid the Settlement Memorandum he admittedly signed and thereby prevent enforcement of the Settlement.

### B. *Extortion*

Chan argues that his purported consent to the Settlement was obtained by his attorney through extortion in violation of Penal Code section 518, and that once he had established this fact in opposition to the motions, defendants' continued attempt to enforce the Settlement constituted buying property obtained through extortion in violation of Penal Code section 496, subdivision (a). He contends that the court's granting of defendants' motions to enforce "constituted aiding [and abetting] in the selling of property" obtained by extortion. Chan asserts that therefore the Settlement was a void contract that could not be enforced. Notably, he cites no authority that would support his contentions that his attorney and defendants violated Penal Code sections 518 and 496, subdivision (a), respectively.

█ "Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful

---

decision of the court or a judgment. [Citations.]' [Citation.]" (*Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 77–78 [50 Cal.Rptr.3d 149].)

[11] The Lunds do not specifically address standard of review in their brief. They, however, spend the majority of their discussion arguing legal issues such as the inadmissibility of any testimony by the mediator, whether the offer of Chan's attorney to discount his fees constituted a business transaction under the Rules of Professional Conduct, and whether there was a legal basis for rescission. They also argue that there was no evidence supporting Chan's claim of extortion.

use of force or fear, or under color of official right." (Pen. Code, § 518; see also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 326 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*).) Fear for purposes of extortion may be accomplished by a threat "[t]o do an unlawful injury to the person or property of the individual threatened or of a third person . . . ." (Pen. Code, § 519, subd. 1.)[12] Attorneys are not exempt from the principles of extortion in their professional conduct. (*Flatley*, at p. 327; see also *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 318 [93 Cal.Rptr.3d 24] [attorney's assistance to client in presenting State Bar complaint about associated counsel done to coerce that counsel's signature on settlement check constituted extortion].) ■ Additionally, a person who buys or receives property knowing that it has been stolen or obtained through extortion is guilty of a crime under Penal Code section 496, subdivision (a).[13]

Chan contends that his attorney committed extortion. He argues that the threat to abandon him at trial—and in particular without complying with the legal requirements of rule 3-700[14]—constituted a wrongful threat to do injury to Chan's property, namely, his causes of action against defendants asserted in the case. Chan contends further that defendants—by pursuing enforcement of the Settlement after becoming aware of Chan's assertion that his signature on the Settlement Memorandum was obtained through extortion—were themselves guilty of violating Penal Code section 496, subdivision (a), because in doing so, they purchased property (i.e., Chan's claims), knowing that the sale of the claims was obtained through extortion.

In his argument, Chan fails to cite to the record in support of his claim that his signature on the Settlement Memorandum was obtained through extortion. Further, assuming that his extortion claim is based upon the circumstances surrounding the August 4 mediation session and Chan's execution of the

---

[12] "Fear, such as will constitute extortion, may be induced by a threat, either: [¶] 1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or, [¶] 2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or, [¶] 3. To expose, or to impute to him or them any deformity, disgrace or crime; or, [¶] 4. To expose any secret affecting him or them." (Pen. Code, § 519.)

[13] "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year. . . ." (Pen. Code, § 496, subd. (a).)

[14] "(1) If permission for termination of employment is required by the rules of a tribunal, a member shall not withdraw from employment in a proceeding before that tribunal without its permission. [¶] (2) A member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, complying with rule 3-700(D), and complying with applicable laws and rules." (Rule 3-700(A).)

Settlement Memorandum discussed in the "Statement of Facts" section of his opening brief,[15] we are nonetheless dubious that he made a prima face showing of extortion.

■ In order to establish extortion, "the wrongful use of force or fear must be the operating or controlling cause compelling the victim's consent to surrender the thing to the extortionist. [Citation.]" (*People v. Goodman* (1958) 159 Cal.App.2d 54, 61 [323 P.2d 536] (*Goodman*).) Here, it is doubtful that Chan presented evidence below establishing that his attorney's alleged wrongful use of fear—i.e., the alleged threat to withdraw—was the operating or controlling cause of Chan's execution of the Settlement Memorandum.

Chan stated in his declaration that as a result of his attorney's first threat on August 3 to abandon him, he attended the mediation session the next day (which he had otherwise told his attorney he would not attend) in an effort to persuade his attorney to retract his threat of abandoning him. According to Chan's declaration, the attorney initially told him on August 4 that he intended to represent him at trial, and then later during mediation stated that he would not do so because Chan "was not negotiating." Chan stated that as the mediation proceeded, his attorney, "without rescinding his threat of abandonment, and to further induce [Chan] to accept <u>both</u> the monetary settlement and the terms of the stipulation for injunction set forth in [the Settlement Memorandum], which contains language with additional constraints on [Chan's] interests that were not included in the May, 2008 proposed stipulation for injunction," offered to discount his fee by $10,000 if Chan would agree to the injunctive terms as well as the monetary terms in the Settlement Memorandum. But by the very terms of the Settlement Memorandum, the monetary terms were "not conditioned or contingent on the parties . . . reaching or entering into [a] stipulated injunctive order." This point was reiterated on the second page of the Settlement Memorandum, where it was stated that the general release of claims as between Chan and the Lunds "shall not apply . . . as to any injunctive claims in the event that they cannot agree on and execute a Stipulation for Injunctive Orders." And because the Settlement Memorandum provided expressly that the monetary settlement and releases in connection therewith were not contingent on the ultimate agreement of Chan and the Lunds to the stipulation for injunction, the court's order

---

[15] We observe that Chan's opening brief is noncompliant in that it fails to contain proper citations to the appellate record (i.e., the joint appendix) supporting factual matters recited in the brief purportedly appearing in the record below. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [any matters referenced from the record in appellate briefs must be supported "by a citation to the volume and page number of the record where the matter appears"].) In instances where an appellate brief's noncompliance with this rule is substantial, the court may order the brief stricken. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 [94 Cal.Rptr.3d 802].) We have nonetheless overlooked this noncompliance and have considered the contentions and factual assertions made by Chan in his brief.

expressly limited enforcement to the monetary settlement only. Thus, Chan's statement that his attorney's actions resulted in his execution of the Settlement Memorandum notwithstanding, it is unclear—given that Chan had "provisionally" agreed in May to the monetary terms of the ultimate Settlement after earlier mediation sessions, and the Settlement, by its own terms, did not include a stipulation for injunctive relief that Chan claims was coerced by the attorney—that his alleged threat to withdraw from the case was the "operating or controlling cause compelling" Chan to sign the Settlement Memorandum. (*Goodman, supra*, 159 Cal.App.2d at p. 61.)[16]

 Moreover, even were Chan to have established that his attorney's threatened withdrawal was the operating or controlling cause of Chan's execution of the Settlement Memorandum, extortion contemplates the surrender by the victim of his or her property to the extortionist as a result of the force or fear employed by the extortionist. (Pen. Code, § 518; *Goodman, supra*, 159 Cal.App.2d at p. 61.) Here, the property Chan contends was subject to the alleged extortion (i.e., his claims in the lawsuit) was surrendered *to defendants* in exchange for separate payments made by defendants' insurers, and not to the alleged extortionist, Chan's attorney. For this additional reason, we find that Chan's claim of extortion lacks merit. (See *Wolk v. Green* (N.D.Cal. 2007) 516 F.Supp.2d 1121, 1129–1130 [client failed to state cause of action for extortion under Pen. Code, § 518, based upon attorney's threat of withdrawing from representation of client in defamation suit unless she provided additional funds to attorney].)

 Finally, even were we to conclude that Chan had presented a factual basis for extortion, we nonetheless reject his contention that defendants' pursuit of the motions to enforce settlement constituted a violation of Penal Code section 496, subdivision (a). That statute requires that the party receiving the stolen property or property obtained through extortion do so knowingly. There is no evidence of any awareness by the Lunds or Norma Tree on August 4 that Chan's signature on the Settlement Memorandum was obtained through extortion. Chan admits that defendants had no such knowledge at the time of the final mediation session. But Chan contends that once he filed opposition to defendants' motions detailing his claim that Chan's execution of the Settlement Memorandum was the result of his attorney's extortion, defendants' continued pursuit of enforcement of the Settlement amounted to knowingly receiving extorted property in violation of Penal Code

---

[16] This doubt as to whether the attorney's actions caused Chan to sign the Settlement Memorandum is underscored by Chan's subsequent actions affirming the settlement, notably, (1) his transmittal of a W-9 form to his attorney on August 5 that was requested by Norma Tree's attorney to conclude the Settlement; and (2) the communication on August 12 from Chan's attorney to Norma Tree's attorney, indicating that Chan had only " 'one reservation and qualification' " concerning the settlement documents that concerned the proposed stipulation for injunction.

section 496, subdivision (a). We disagree. We know of no authority—and Chan has cited none—suggesting that an adverse party seeking to enforce an agreement to settle commits a violation of section 496, subdivision (a), merely by becoming aware during the pendency of the motion of an uncorroborated, unadjudicated claim of another party that his or her consent was not freely given.[17]

Accordingly, we reject Chan's contentions that the court should not have enforced the Settlement because Chan's execution of the Settlement Memorandum was obtained through extortion or because defendants' motions to enforce constituted violations of section 496, subdivision (a) of the Penal Code.

### C. *Rescission of Settlement Agreement*

Chan contends that as a result of his attorney's conduct, the settlement agreement was subject to rescission under various legal theories. He argues that his consent was procured by (1) economic duress; (2) undue influence, both because the attorney engaged in an invalid business transaction with his client, Chan, and because the attorney generally took unfair advantage of him; and (3) fraud. As was the case with his extortion argument (see pt. II.B. & fn. 13, *ante*), Chan has failed to cite to specific portions of the appellate record in support of these assertions. We nonetheless address these theories on their merits below.

### 1. *Economic duress*

Chan argues that his attorney's conduct constituted economic duress that rendered Chan's apparent consent as reflected in the Settlement Memorandum not real or free. He contends that the attorney's threatened abandonment and failure to take reasonable steps to avoid prejudice to his client from such withdrawal amounted to economic duress.

The court in *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154 [204 Cal.Rptr. 86] (*Rich & Whillock*)—a case relied on by Chan—described the doctrine of economic duress as follows: "The [economic duress] doctrine is equitably based [citation] and represents 'but an expansion by courts of equity of the old common-law doctrine of duress.' [Citation.] As it has evolved to the present day, the economic duress doctrine is not limited by early statutory and judicial expressions requiring an unlawful act in the nature of a tort or a crime. [Citations.] Instead, the

---

[17] We likewise reject Chan's novel contention, unsupported by precedent, that the court aided and abetted defendants' violation of Penal Code section 496, subdivision (a), by granting the motions to enforce settlement.

doctrine now may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. [Citations.] The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine. [Citations.] Further, a reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin. [Citations.]" (*Id.* at pp. 1158–1159, fn. omitted.)

■ A party whose consent to a contract has been obtained by economic duress may rescind the contract under certain circumstances. "A party to a contract may rescind the contract . . . . [¶] (1) If the consent of the party rescinding, . . . was . . . obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." (Civ. Code, § 1689, subd. (b).) Thus, a party who enters into a contract under duress may obtain rescission against another contracting party, who, although not responsible for the duress, knows that it has taken place and takes advantage of it by enforcing the contract, particularly a contract made with inadequate consideration. (*Leeper v. Beltrami* (1959) 53 Cal.2d 195, 206 [1 Cal.Rptr. 12, 347 P.2d 12]; see also Rest.2d Contracts, § 175, com. e, p. 479.)[18]

Here, assuming arguendo that Chan demonstrated that he signed the Settlement Memorandum under economic duress as a result of his attorney's threatened withdrawal, the attorney was neither a party to the Settlement nor "jointly interested" with any contracting party. (Civ. Code, § 1689, subd. (b)(1).) Further, there is nothing in the record to suggest that defendants in any way connived with Chan's attorney in allegedly exerting such pressure. (*Ibid.*) Indeed, there is no evidence that defendants were even aware of the alleged threat at the time of Chan's execution of the Settlement Memorandum. In short, even assuming the attorney exercised duress upon Chan and that this duress caused him to sign the Settlement Memorandum,[19] Chan presented no legal grounds for rescission.

---

[18] "If a party's assent has been induced by the duress of a third person, rather than that of the other party to the contract, the contract is nevertheless voidable by the victim. There is, however, an important exception if the other party has, in good faith and without reason to know of the duress, given value or changed his position materially in reliance on the transaction. 'Value' includes a performance or a return promise that is consideration . . . so that the other party is protected if he has made the contract in good faith before learning of the duress. [Citation.]" (Rest.2d Contracts, § 175, com. e, p. 479.)

[19] As we observed above (see pt. II.B., *ante*), since Chan had "provisionally" agreed in May to the monetary terms of the ultimate Settlement, and the Settlement did not include the stipulation for injunctive relief that Chan claims was coerced by his attorney, it is debatable

■ In *Bistany v. PNC Bank, NA* (D.Mass. 2008) 585 F.Supp.2d 179 (*Bistany*), the plaintiffs made a similar argument in support of their contention that they should not be bound by their settlement. In *Bistany*, after the plaintiffs had authorized their attorney to propose a settlement of certain bank litigation and a settlement had been confirmed between counsel, the plaintiffs discharged their attorney and repudiated the settlement. (*Id.* at p. 181.) In response to the bank's motion to enforce settlement, the plaintiffs argued that their attorney coerced them into settling by threatening to withdraw from the litigation unless they signed the settlement proposal to the bank. (*Id.* at p. 183.) The court rejected the plaintiffs' contention that the settlement agreement was voidable because their consent was given under duress, concluding that "such threats do not constitute duress." (*Ibid.*) It reasoned: "Upholding a settlement under such circumstances is warranted because, in general, duress must emanate from the opposing party to an agreement, not one's own attorney, unless the opposing party knows of the duress. [Citations.] Therefore, this Court finds that the defense of duress is unavailable to the Bistanys." (*Ibid.*)

Chan's reliance on *Rich & Whillock, supra*, 157 Cal.App.3d 1154, is misplaced. In that case, the defendant, after encouraging the plaintiff to complete its grading and excavating work and without expressing any disagreement with progress billings, refused to pay the balance when the final billing was submitted. (*Id.* at p. 1156.) After the plaintiff complained that nonpayment would cause it (a new company) financial ruin, the defendant offered a nonnegotiable settlement of approximately two-thirds of the amount due, and the plaintiff reluctantly agreed, stating the proposal "was 'blackmail' and [it] was signing it only because [it] had to in order to survive." (*Id.* at p. 1157.) After the plaintiff signed a release and was paid pursuant to the compromise, the plaintiff sued for the balance owing under the original agreement. The court held that the defendant's conduct constituted a bad faith breach of the agreement, and that the trial court had thus properly concluded that the release was the product of economic duress and did not bar the plaintiff from suing for the balance owed under the original contract. (*Id.* at pp. 1160–1161.)

■ In the case before us, defendants were not responsible for any alleged acts of economic duress and were not aware of Chan's allegation that his consent to the Settlement was coerced until after the contract was entered into. The party responsible for the alleged duress, Chan's attorney, was not a party to the agreement. *Rich & Whillock*, obviously has no application to the circumstances here, and Chan was not entitled to rescind the Settlement under Civil Code section 1689, subdivision (b)(1).

---

whether the attorney's alleged threat to withdraw from the case, if it occurred, was the cause of Chan's execution of the Settlement Memorandum.

### 2. *Undue influence*

Chan also asserts that his attorney's offer to discount his fees as an inducement to Chan to settle constituted undue influence because the act violated rule 3-300. He argues further that "[e]ven according to more exacting legal standards for undue influence between persons not in a fiduciary relationship," his attorney's "tactics amounted to undue influence . . . ." He urges that rescission of the agreement to settle is thus appropriate because his consent was obtained through undue influence.

 Rule 3-300 prohibits an attorney from entering into a business transaction with his or her client unless (1) the terms of the transaction are fair and reasonable to the client and are fully disclosed in writing, (2) the client is given written notice of the right to seek the advice of independent counsel and is afforded a reasonable opportunity to do so, and (3) the client consents in writing to the transaction.[20] Although the rule does not define "business transaction," the comments to the rule make it clear that the restrictions against business transactions do not encompass retainer agreements between attorney and client: "Rule 3-300 is not intended to apply to the agreement by which the member is retained by the client, unless the agreement confers on the member an ownership, possessory, security, or other pecuniary interest adverse to the client. Such an agreement is governed, in part, by rule 4-200.[21]" (Rule 3-300, Discussion, ¶ 1.) The rule, however, does apply to an arrangement where the attorney "wishes to obtain an interest

---

[20] "A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: [¶] (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and [¶] (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and [¶] (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition." (Rule 3-300.)

[21] "(A) A member shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee. [¶] (B) Unconscionability of a fee shall be determined on the basis of all the facts and circumstances existing at the time the agreement is entered into except where the parties contemplate that the fee will be affected by later events. Among the factors to be considered, where appropriate, in determining the conscionability of a fee are the following: [¶] (1) The amount of the fee in proportion to the value of the services performed. [¶] (2) The relative sophistication of the member and the client. [¶] (3) The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly. [¶] (4) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the member. [¶] (5) The amount involved and the results obtained. [¶] (6) The time limitations imposed by the client or by the circumstances. [¶] (7) The nature and length of the professional relationship with the client. [¶] (8) The experience, reputation, and ability of the member or members performing the services. [¶] (9) Whether the fee is fixed or contingent. [¶] (10) The time and labor required. [¶] (11) The informed consent of the client to the fee." (Rule 4-200.)

in client's property in order to secure the amount of the [attorney's] past due or future fees." (Rule 3-300, Discussion, ¶ 3; cf. *Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1104 [29 Cal.Rptr.3d 499] [rule 3-300 does not apply to unsecured promissory note executed by client in favor of attorney to memorialize obligation for unpaid fees].)

Here, there was no "business transaction" between the attorney and client that Chan's attorney allegedly sought to enter into. He merely offered to discount the amount of fees he would charge Chan for the litigation and did so (according to Chan) as an inducement to Chan to settle. By discounting his fees, the attorney did not enter into a business transaction with Chan. Nor did he acquire an interest in Chan's property—the fee-discount offer did not involve his obtaining an interest in Chan's third party claims or in the settlement proceeds from the case.

Chan cites no relevant authority in support of his claim that his attorney's alleged offer to discount fees was a business transaction with a client controlled by rule 3-300. Instead, he relies on the inapposite case of *BGJ Associates v. Wilson* (2003) 113 Cal.App.4th 1217 [7 Cal.Rptr.3d 140] (*BGJ Associates*). In *BGJ Associates*, the attorney, after filing suit on behalf of his client to enforce a prescriptive easement over property adjacent to his client's, and while the suit was still pending, entered into an oral joint venture agreement with the client to acquire the adjacent property. (*Id.* at pp. 1221–1222.) After the relationship between attorney and client deteriorated and while the easement suit was still pending, the attorney brought suit against the client claiming, inter alia, breach of an oral agreement. (*Id.* at pp. 1222–1224.) The client asserted that the transaction with the attorney was void or voidable because of the absence of compliance with rule 3-300 and was presumptively a breach of fiduciary duty under Probate Code section 16004, and the trial court agreed that the transaction was void as against public policy. (*BGJ Associates*, at p. 1225.) The appellate court agreed that the oral agreement constituted a business transaction between attorney and client and that the attorney did not comply with rule 3-300. (*BGJ Associates*, at pp. 1226–1227.) It held further that a violation of the rule "subjects an attorney to disciplinary proceedings, but does not in itself provide a basis for civil liability. [Citation.]" (*Id.* at p. 1227.) Although the court agreed that the trial court properly held that the oral agreement was unenforceable (*id.* at p. 1231), it reasoned that the agreement was voidable, not void, as a result of undue influence that rendered the attorney's conduct a violation of his fiduciary duties under Probate Code section 16004. (*BGJ Associates*, at p. 1229.) As is obvious from a brief recitation of these facts, *BGJ Associates*

is plainly distinguishable and offers no support for the claim here that the alleged fee-discount offer by Chan's attorney was governed by rule 3-300.[22]

Chan asserts further that, even without regard to the fiduciary role of Chan's attorney, his counsel's "tactics amounted to undue influence" under Civil Code section 1575. That statute provides that undue influence includes "taking a grossly oppressive and unfair advantage of another's necessities or distress." (Civ. Code, § 1575, subd. 3.)[23] Chan argues, citing *Keithley v. Civil Service Bd.* (1970) 11 Cal.App.3d 443 [89 Cal.Rptr. 809] (*Keithley*), that his attorney, by threatening to withdraw on August 3, rescinding the threat on August 4, and then shortly thereafter the same day renewing the threat, subjected Chan to "overpersuasion" that resulted in Chan's execution of the Settlement Memorandum. (*Id.* at p. 452.)

Although *Keithley, supra,* 11 Cal.App.3d 443, is distinguishable,[24] and we doubt that Chan presented a sufficient showing of undue influence, we need not decide whether the attorney's actions as alleged in Chan's opposition

---

[22] Under a heading in his opening brief separate from his undue influence argument, Chan challenges the Settlement, again on the basis that it was created as a result of his attorney's entering into an invalid business transaction with his client, namely, the discounting of his fees. Since we have concluded in this section that the discounting of fees was not an unauthorized business transaction restricted under rule 3-300, we need not address Chan's separate, but somewhat redundant, argument claiming an invalid business transaction.

[23] "Undue influence consists: [¶] 1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; [¶] 2. In taking an unfair advantage of another's weakness of mind; or, [¶] 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress." (Civ. Code, § 1575.)

[24] In *Keithley, supra,* 11 Cal.App.3d 443, an Oakland police officer, Liquori, resigned his position after being told by superiors that an allegation of rape had been asserted within the department, an allegation Liquori denied. (*Id.* at p. 447.) The appellate court concluded that there was substantial evidence to support the conclusion of Oakland's Civil Service Board that Liquori's resignation had been the product of undue influence, based upon such facts as his having been "called to police headquarters on three successive days, . . . kept waiting for long periods of time, . . . interrogated by a member of the homicide squad, and on the third day . . . ordered to appear before [Deputy Chief] Brown, who, although already advised that the charges had been dropped, proceeded to read the statements regarding the charges and asked Liquori what he was going to do, emphasizing simultaneously that the charges should not be made public and suggesting that Liquori was guilty of unofficer-like conduct. Liquori was not given any time to consider what he wanted to do and was repeatedly asked what he was going to do about the situation. There was also evidence that at the time he signed his resignation Liquori was emotionally upset and that he was physically fatigued because he had not slept for 24 hours. These facts reasonably lend themselves to the inference that excessive pressure was used to persuade Liquori, who was vulnerable to such pressure by Brown, a dominant person, so as to overcome Liquori's will without convincing his judgment." (*Id.* at p. 452.) While Chan emphasizes the attorney's dominant role and the excessive pressure he allegedly placed upon Chan to settle, the circumstances of *Keithley* are readily distinguishable from those presented here. Moreover, we reject Chan's argument that the mediator, Kelly, also exerted improper pressure on Chan to settle; there is nothing in the record supporting this assertion.

constituted undue influence. As noted above, rescission may be granted "[i]f the consent of the party rescinding, . . . was . . . obtained through . . . undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." (Civ. Code, § 1689, subd. (b)(1).) Regardless of whether any alleged pressure by the attorney to settle constituted undue influence, he was not "jointly interested" in the contract (i.e., the Settlement Memorandum), and there was no showing that his alleged "overpersuasion" (*Keithley*, at p. 452) of Chan was done "with the connivance" of any of the defendants. Therefore, Chan was not entitled to rescission under Civil Code section 1689 based upon undue influence. (See *Carroll v. Carroll* (1940) 16 Cal.2d 761, 770–771 [108 P.2d 420] [fact that wife's execution of note and deed of trust was procured through duress of husband did not justify rescission as against parties who did not participate in or have knowledge of husband's acts]; see also *Bistany, supra,* 585 F.Supp.2d at p. 183.)

### 3. *Fraud*

Chan contends that the attorney's alleged threat to abandon him, coupled with his failure to advise him that court permission was required in order for him to withdraw as counsel in the case, constituted fraud that warranted Chan's rescission of the Settlement. This contention also lacks merit.

Chan cites no cases that hold that an attorney's threatened withdrawal, along with the failure to advise the client that the withdrawal requires court approval, constitutes fraud.[25] Irrespective of whether the alleged conduct by Chan's attorney constituted fraud, however, Chan presented no basis for rescission. As is the case with his duress- and undue-influence-based rescission claims, his contention that he may rescind the Settlement because of his attorney's alleged fraud fails under Civil Code section 1689, subdivision (b)(1), because defendants did not connive with Chan's attorney concerning the alleged fraud and the attorney was not a person "jointly interested" in the Settlement. (See *N.Y. Life Ins. Co. v. Occidental Pet. Corp.* (1941) 43 Cal.App.2d 747 [111 P.2d 707] [rescission of assignment of life insurance policy not available where alleged misrepresentation not made or authorized by assignee].)

### D. *Mediation Confidentiality Barring Testimony of Mediator*

Chan asserts that the trial court erred by denying him the right to present evidence from the mediator by applying the statutory scheme that prohibits a

---

[25] The only case referenced by Chan, *Manfredi & Levine v. Superior Court* (1998) 66 Cal.App.4th 1128, 1133 [78 Cal.Rptr.2d 494], is cited for the unremarkable proposition that the determination of whether to grant an attorney's motion to withdraw from a case is within the trial court's discretion.

party from introducing in a subsequent proceeding any evidence concerning a prior mediation. He argues at length that under the circumstances, the application of mediation confidentiality[26] constituted a denial of Chan's right to due process under the federal and state Constitutions.

The record fails to disclose that the court specifically ruled that Chan was precluded from introducing evidence in opposition to the motions on the basis of mediation confidentiality. The order granting the motions makes no mention of a ruling excluding any evidence proffered by Chan. Similarly, neither the order denying Chan's first ex parte application, nor its minute order denying Chan's second ex parte application, contains a ruling excluding evidence. Further, there is nothing appearing in the transcript of the hearing on defendants' motions on the subject of the mediation privilege or suggesting that the court applied that privilege to exclude evidence proffered by Chan. And at the hearing in March 2009 on Chan's second ex parte application,[27] while the transcript reflects a discussion in which Chan's attorney, Tichinin, advised the court of his belief that Kelly, if subpoenaed, would support Chan's claim that his attorney threatened at the mediation to withdraw if Chan refused to settle, the court did not exclude any evidence proffered by Chan or otherwise rule that mediation confidentiality barred evidence that Chan offered to introduce.[28]

 In short, because there is no specific order or ruling in which the court held that Chan was barred from introducing evidence to oppose enforcement of the settlement, we need not address Chan's constitutional argument. The argument is based upon a theoretical issue: if Chan had made a specific offer of proof, and if the court had rejected that proffer on the basis

---

[26] "Practitioners and the courts sometimes refer to the confidentiality afforded by statute to communications made in connection with mediation as a 'mediation privilege.' [Citations.] Since the Evidence Code does not use the term 'privilege,' we will use 'mediation confidentiality' in our discussion of the statutory provisions rendering communications made in connection with mediation confidential." (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1572, fn. 5 [36 Cal.Rptr.3d 901].)

[27] There is no reporter's transcript from the hearing on Chan's first ex parte application, which occurred in December 2008.

[28] Chan's offer of proof concerning testimony by the mediator, Kelly, consisted of Tichinin's advising the court that he believed that Kelly would corroborate Chan's declaration to the effect that during the mediation (1) Chan initially told Kelly that he was appearing at the mediation to find out if his attorney was going to represent him at trial, (2) Chan advised Kelly that he would only approve the stipulation for injunction as it was proposed in May 2008, and (3) his attorney then told Chan that he was not negotiating and that the attorney would not represent Chan at trial. In neither the second ex parte application nor in Tichinin's oral argument did he indicate the basis for his belief that Kelly would corroborate his client's version of the events at the mediation. Rather, it appears that Tichinin's offer of proof—consisting of merely a duplication of a portion of Chan's declaration—appears to be more an offer of hope (i.e., a recitation of the testimony Tichinin hoped Kelly would give) than an offer of proof.

that such evidence was barred by mediation confidentiality, such a ruling would have deprived Chan of his right to due process. (See *In re Jody R.* (1990) 218 Cal.App.3d 1615, 1621–1622 [267 Cal.Rptr. 746] [appellate court generally does not decide academic or moot issues].)

## DISPOSITION

The judgment on the order granting the motions to enforce settlement pursuant to Code of Civil Procedure section 664.6 is affirmed.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied October 28, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 12, 2011, S187992.