Filed 9/28/15  Chan v. Packard CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BILL S. CHAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DAVID R. PACKARD et al., <br><br> Defendants and Respondents. | H040561 <br> (Santa Clara County <br> Super. Ct. No. 109CV150251) |

## I.  INTRODUCTION

Appellant Bill S. Chan brought a legal malpractice action against his former attorney, David R. Packard, alleging that Packard had breached the standard of care in connection with the underlying litigation, which arose from Chan's dispute with his neighbors regarding tree cutting.  After a jury trial in the legal malpractice action, judgment was entered in Packard's favor.

On appeal, Chan contends that the trial court committed reversible evidentiary error by granting Packard's motion in limine No. 6 and excluding evidence of the threats that Packard allegedly made to coerce Chan into settling the underlying action.  For reasons that we explain, we determine that Chan has failed to meet his burden as an appellant to show that the claimed evidentiary error was prejudicial.  We will therefore affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Chan v. Lund*

The lawsuit that underlies the present legal malpractice action was the subject of this court's decision in *Chan v. Lund* (2010) 188 Cal.App.4th 1159. The neighbor dispute that gave rise to the lawsuit was described in *Chan v. Lund* as follows: "This five-year-old dispute arises out of the cutting of a number of Leyland cypress trees on Bill Chan's Los Altos property adjacent to a fence separating his property and the property of Craig T. and Kathleen Lund (the Lunds). The Lunds hired an unlicensed tree contractor, Norma Gonzalez, doing business as Norma Tree Service (Norma Tree), to trim the trees, which had branches that extended onto the Lunds' property. Chan brought suit against the Lunds and (later) Norma Tree. The lawsuit was purportedly settled on the eve of trial in August 2008 in proceedings before a mediator, and the terms of the purported settlement were reduced to writing. Shortly thereafter, Chan discharged his attorney, hired new counsel, and claimed that his consent to the purported settlement was obtained through economic duress, undue influence, and fraud employed by his former attorney. The court granted the Lunds' and Norma Tree's motions to enforce settlement under Code of Civil Procedure section 664.6, and Chan appealed from the judgment entered thereon." (*Chan v. Lund, supra,* at pp. 1162-1163.)

Chan argued on appeal in *Chan v. Lund* that the motions to enforce settlement should have been denied because his consent to the settlement was coerced by his attorney, who had threatened to abandon him at trial, and the coercion would have been corroborated by the mediator's testimony. (*Chan v. Lund*, *supra*, 188 Cal.App.4th at pp. 1168-1170.) Chan contended that the trial court had "erred by denying him the right to present evidence from the mediator by applying the statutory scheme that prohibits a party from introducing in a subsequent proceeding any evidence concerning a prior mediation. He argue[d] at length that under the circumstances, the application of

2

mediation confidentiality constituted a denial of Chan's right to due process under the federal and state Constitutions." (*Chan v. Lund, supra,* at pp. 1179-1180, fn. omitted.)

This court rejected Chan's claim of evidentiary error on the ground that "[t]he record fails to disclose that the court specifically ruled that Chan was precluded from introducing evidence in opposition to the motions on the basis of mediation confidentiality. . . . [¶] In short, because there is no specific order or ruling in which the court held that Chan was barred from introducing evidence to oppose enforcement of the settlement, we need not address Chan's constitutional argument." (*Chan v. Lund*, *supra*, 188 Cal.App.4th at p. 1180.)

Finding no merit in Chan's contentions on appeal, this court affirmed the order granting the motions to enforce settlement pursuant to Code of Civil Procedure section 664.6. (*Chan v. Lund*, *supra*, 188 Cal.App.4th at p 1181.)

**B.** *The Present Action*

**1. The Pleadings**

The operative complaint is the first amended complaint that was filed in October 2011 (hereafter, the complaint). In his complaint, Chan alleged that he had an attorney-client relationship with defendants Packard and Law Offices of David R. Packard (hereafter, collectively Packard) and that Packard had represented him in connection with the *Chan v. Lund* lawsuit from June 2005 until August 22, 2008.

In the first cause of action for legal malpractice, Chan alleged that Packard had breached the standard of care in connection with the *Chan v. Lund* litigation by (1) failing to contact his neighbors, the Lunds, within a reasonable period of time; (2) failing to send a cease-and-desist letter to the Lunds in a timely manner; (3) failing to promptly seek a temporary restraining order and a preliminary injunction against the Lunds; (4) failing to include a request for injunctive relief in the complaint in *Chan v. Lund*; (5) failing to promptly amend the complaint in *Chan v. Lund* to name a defendant previously identified as a Doe defendant; (6) failing to include a request for injunctive relief in the amended

3

complaint in *Chan v. Lund* and "generally failing to fully and properly investigate, research, plead and litigate [*Chan v. Lund*]."

In the second cause of action for breach of fiduciary duty, Chan alleged that Packard had (1) failed to advise him of their lack of experience in the subject matter of *Chan v. Lund*; (2) failed to provide him with a written retainer agreement indicating the hourly rate; (3) raised their hourly rates twice during the course of representation without his agreement; and (4) "strongly dissuaded [Chan] from pursuing injunctive relief at the very beginning of their representation, soon after the most recent trespass incidents on [Chan's] property."

In the third cause of action for breach of contract, Chan alleged that Packard had breached their "Engagement/Fee Agreement" by failing to provide competent legal services and by raising the hourly rates.

The record reflects that Packard filed a cross-complaint against Chan for attorney's fees.

### 2. Jury Trial Proceedings

The matter proceeded to a jury trial in September and October of 2013. The trial record on appeal is limited to three motions in limine and the testimony of Chan.

### *Motions In Limine*

In his motion in limine No. 1, Chan sought an order prohibiting the introduction of evidence, witnesses, and commentary at trial that referred to or related to the mediation, settlement, and appeal of the underlying case, *Chan v. Lund*. The trial court denied motion in limine No. 1 "to the extent it moves to exclude testimony of settlement, mediation, appeal."

Packard's motion in limine No. 6 also concerned mediation. Relying on the mediation confidentiality provisions of Evidence Code section 1119,[1] Packard sought "to bar introduction of evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation in the underlying case." The trial court determined that motion in limine No. 6 was governed by the California Supreme Court's decision in *Cassel v. Superior Court* (2011) 51 Cal.4th 113 (*Cassel*), which addressed mediation confidentiality in the context of a legal malpractice action. The court granted the motion to the extent that if Packard's "threat to withdraw was made in the context of an anticipated scheduled mediation, it's out under *Cassel*." During trial, the court elaborated on its ruling on motion in limine No. 6, stating that "communication by Mr. Packard a few days ahead of what turned out to be a scheduled mediation, whether or not it was known by Mr. Chan or not, falls within the finding of *Cassel*. . . . [¶] . . . I will not permit testimony to that extent."

Packard also filed a motion in limine No. 1, in which he sought an order excluding evidence pertaining to claims that were not included in the operative complaint. The trial court granted the motion, subject to Chan making a showing of good cause to amend the complaint to conform to proof.

---

[1] Evidence Code section 1119 provides in part: "(a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] . . . [¶] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."

All further statutory references are to the Evidence Code unless otherwise indicated.

## *Chan's Testimony*

Chan testified at trial that he has lived at his home in Los Altos since 1986. The Lunds became his neighbors around 1987. When the Lunds were landscaping their property, Chan agreed to reduce the length of their common fence by 25 feet. After the common fence was shortened, Chan planted photinia shrubs all along the length of his side of the fence to provide a privacy screen. By 1993, the photinia shrubs were about 15 feet tall.

Chan came home from work one day in 1993 and found that the photinia shrubs had been cut down to five feet tall. The contractor who was present told Chan that the Lunds had hired him to cut the photinia. Chan called the police because the photinia were on his property. Chan then decided to extend the common fence back to the street at a height of four feet instead of the prior six feet. As a result of the fence extension, a verbal altercation occurred between Chan and Craig Lund.

By 1998, Chan had concluded that the photinia shrubs were dying and needed to be replaced in order to provide a privacy screen. He had the photinia shrubs removed and replaced them with Leland cypress trees, which he planted three to four feet inside his property line. By 2005, the Leland cypress trees were about 40 feet tall. On May 3, 2005, Chan was at home when he heard a chainsaw. He looked out a window and saw workers in his backyard. Chan spoke to the worker operating the chainsaw, who said that the Lunds had sent him to cut the trees. Chan called the police and showed the cuts in the trees to the police officer who responded. Later, on June 3, 2005, Chan observed additional cuts to the trees.

Chan decided he needed to do something about the damage to his trees. He contacted Packard in a letter in which he mentioned that a police officer had suggested obtaining an injunction. Packard requested that Chan take photographs of the damaged trees and obtain an estimate for replacement costs from an arborist, which Chan did. Chan eventually hired an additional arborist and a surveyor. He also discovered an

6

attorney specializing in tree law who was retained to assist Packard. In a meeting, Packard told Chan that he had never heard of anyone obtaining an injunction in a case like this.

In December 2005 Packard sent a demand letter to the Lunds. A complaint was filed on Chan's behalf in October 2006. The first of five mediations took place in 2007 and the case was evidentially settled and dismissed. Chan testified that he was not satisfied with Packard's legal services because no injunction or large damages award was obtained, which would have stopped the trespasses on his property and the damage to his now dead and dying trees.

### 3. Judgment

The jury verdict was not included in the record on appeal. The judgment on jury verdict entered on October 31, 2013, states that the jury returned its special verdict on October 10, 2013; the jury found in favor of Packard on Chan's complaint; and the jury found in Packard's favor on his cross-complaint and awarded Packard $16,032.35. Chan filed a timely notice of appeal from the judgment.

### III. DISCUSSION

#### A. *The Parties' Contentions*

On appeal, we understand Chan to contend that the judgment should be reversed because the trial court erred in granting Packard's motion in limine No. 6. Chan asserts in his opening brief that his attorney "sought permission to introduce testimony regarding a threat made by Mr. Packard on August 3, 2008 and any prior similar or related attorney-client communications. [Citation.] The threatening language was to the effect that Mr. Packard would withdraw representation of Mr. Chan and abandon him at trial (commencing less than two days later) if Mr. Chan did not attend mediation set by Mr. Packard on August 4, 2008."

Chan argues that the evidence of Packard's threats was not barred by mediation confidentiality because Chan did not consent to the August 4, 2008 mediation, and

7

therefore a mediation was not scheduled within the meaning of section 1119 and the decision in *Cassel*, *supra*, 51 Cal.4th 113. In support of this argument, Chan relies on the decision in *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 161, in which the appellate court determined that the mediation confidentiality provided by section 1119 did not apply to a conversation between the plaintiff's attorney and defense counsel that was "made during a telephone call 'scheduling the expert depos and touching on whether a second mediation conf[erence] would be worthwhile.' "

Chan also contends that the evidence of his "disagreement to mediate" should have been admitted because an agreement to mediate is expressly made admissible under section 1120.[2]

In response, Packard states that he has "consistently denied" that he threatened Chan that if Chan did not settle, Packard would not represent him at trial. Packard also points out that Chan voluntarily appeared at the August 4, 2008 mediation. Packard maintains that under *Cassel*, *supra*, 51 Cal.4th 113, evidence of the alleged threat was properly excluded pursuant to the rules governing mediation confidentiality since the threat was purportedly made during a meeting between Packard and Chan on August 3, 2008, to discuss a fifth mediation,

**B.** *Analysis*

The decision in *Cassel* involved a legal malpractice action in which the plaintiff alleged that his attorneys had coerced him into accepting a settlement offer by threatening to abandon him at trial and making various misrepresentations about the settlement. (*Cassel*, *supra*, 51 Cal.4th at p. 120.) The defendant attorneys moved in limine under the mediation confidentiality statutes to exclude all evidence of communications between the plaintiff and the defendants that were related to mediation. (*Id.* at p. 121.) Our Supreme

---

[2] Section 1120, subdivision (b)(1) provides: "This chapter does not limit any of the following: [¶] The admissibility of an agreement to mediate a dispute."

Court ruled that "such attorney-client communications, like any other communications, were confidential, and therefore were neither discoverable nor admissible—even for purposes of proving a claim of legal malpractice—insofar as they were 'for the purpose of, in the course of, or pursuant to, a mediation . . . .' (§ 1119, subd. (a).)" (*Cassel*, *supra*, at p. 138; see also *Amis v. Greenberg Traurig LLP* (2015) 235 Cal.App.4th 331, 328-329 [summary judgment properly granted in legal malpractice case where the mediation confidentiality statutes precluded admission of crucial attorney-client communications during mediation].)

However, we need not determine whether the trial court erred under *Cassel* in granting Packard's motion in limine No. 6 and excluding evidence of Packard's alleged threats to Chan on the ground that the threats occurred pursuant to a mediation. As we will discuss, even assuming that the trial court erred, Chan has not shown that the error is reversible under the applicable standard of review, as set forth in this court's decision in *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*): "We review a trial court's evidentiary rulings for abuse of discretion. [Citation.] This is particularly so with respect to rulings that turn on the relevance of the proferred evidence. [Citation.] This standard is not met by merely arguing that a different ruling would have been better. Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.] There must be a showing of a clear case of abuse *and miscarriage of justice* in order to warrant a reversal. [Citation.]" (Italics added.)

The standard of review stated in *Shaw* is consistent with section 354, which provides in part that "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice . . . ."

9

The California Supreme Court has instructed that "[t]he phrase 'miscarriage of justice' has a settled meaning in our law, having been explained in the seminal case of *People v. Watson* (1956) 46 Cal.2d 818 []. Thus, 'a "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.] 'We have made clear that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance,* more than an *abstract possibility.*' [Citation.]" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 (*Cassim*).)

In other words, "[t]he *Watson* standard is essentially congruent with the longtime statutory standard for reversal set forth in Code of Civil Procedure section 475, which provides in pertinent part that '[n]o judgment . . . shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect *was prejudicial,* and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, *and that a different result would have been probable* if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown.' (Italics added.)" (*Cassim*, *supra*, 33 Cal.4th at p. 802.)

"[T]he appellant bears the duty of spelling out in his [or her] brief exactly how the error caused a miscarriage of justice. [Citations.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 (*Paterno*).) The reviewing court has no duty to review the entire record unless the appellant has provided "a proper prejudice argument." (*Ibid.*)

In the present case, we find that Chan has not provided any prejudice argument on appeal. He has not attempted to satisfy his "duty of spelling out" how he would have obtained a more favorable result in the jury trial of his legal malpractice action absent the trial court's error in granting Packard's motion in limine No. 6 and excluding evidence

10

of Packard's threat that if Chan did not settle, Packard would not represent him at trial. (See *Paterno*, *supra*, 74 Cal.App.4th at p. 106; *Cassim*, *supra*, 33 Cal.4th at p. 800.) Therefore, even assuming that the trial court committed evidentiary error in its ruling on motion in limine No. 6, we conclude that Chan has failed to satisfy his burden as an appellant to show that the error was prejudicial. We will therefore affirm the judgment.

## IV. DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.